[Sac. No. 4057. In Bank.—May 1, 1931.]

LILLIE D. SMELLIE et al., Appellants, v. SOUTHERN PACIFIC COMPANY (a Corporation) et al., Respondents.

Conley, Conley & Conley, W. M. Conley, Philip Conley and Matthew Conley for Appellants.

Philip M. Carey, Carter & Peterson, J. Maxwell Payser, J. E. Rodgers, A. F. Bray, Mortimer B. Veale and Robert E. Hatch, *Amici Curiae* for Appellants.

Cooley, Crowley & Gallagher, L. L. Cory, Cooley & Gallagher, Gallaher & Jertberg, H. I. Maxin, Devlin & Devlin & Diepenbrock, Cooley, Crowley & Supple, W. H. Stammer and R. W. Dunn for Respondents.

J. Hampton Hoge and A. Dal Thomson, *Amici Curiae* for Respondent.

SHENK, J.—This is an appeal by the plaintiffs from a judgment on a directed verdict in favor of the defendants. The case was originally heard in department. A hearing in bank was ordered. Thereafter an order was entered affirming the judgment. In due course a rehearing was granted in order that further consideration might be given to the effect of the disputable presumption declared by subivision

4 of section 1963 of the Code of Civil Procedure, viz., "that a person takes ordinary care of his own concerns", in the light of the particular circumstances of this case. The effect of that presumption was discussed at length in the opinion. The cause of action arose before the enactment of section 141¾ of the California Vehicle Act in 1929 (Stats. 1929, p. 1580), and the effect of that section on the cause of action of the plaintiffs as heirs of the deceased, who was a guest of the defendant Ireland at the time the accident occurred, was also considered. A second rehearing was granted for two reasons, first, because the effect of said section 141¾ was also involved in a case then pending on appeal in this court and undetermined, and it seemed desirable to give further consideration to the subject in the light of the arguments to be made in that case; and, secondly, because we were willing to give further consideration to the effect of the foregoing presumption as applied to this case.

It was contended in the other pending case that the enactment of said section 141¾ operated as an abatement of the cause of action therein, as it was and is contended in this case that because of said enactment the cause of action had abated as to the defendant Ireland. ■ Since the rehearing herein was granted the question of the effect of that section on the present action against the defendant Ireland has been set at rest against the contention of that defendant by the determination in that case wherein it was held that said section was not retroactive in its operation. (*Krause* v. *Rarity,* 210 Cal. 644 [293 Pac. 62].) No further discussion need, therefore, be indulged on this branch of the case.

The former opinion in this case correctly stated the essential facts and discussed at length the effect of said presumption. The facts so stated and the discussion of the law therein to the extent hereinafter quoted, are adopted for the purposes of this opinion. They are as follows:

"This appeal is taken from a judgment for defendants upon a directed verdict returned by the jury in an action brought by the widow and four minor sons of Robert S. Smellie, deceased, to recover damages for the death of said decedent, who was killed when the automobile truck in which he was riding as the guest of defendant L. Ireland, the driver and owner thereof, was struck by a train of de-

fendant Southern Pacific Company. The court held at the conclusion of plaintiffs' case that the evidence established as a matter of law contributory negligence on the part of said decedent and directed a verdict to be returned in favor of defendants. The correctness of this ruling is here challenged.

"The accident occurred at about 5 o'clock p. m. on June 25, 1926, in the city of Madera. The truck in which decedent was riding was of the Reo manufacture and was used by Ireland in a general trucking business conducted by him. Ireland was called by plaintiffs as their witness under the provisions of section 2055 of the Code of Civil Procedure. He testified that he turned off the state highway, on which he had been traveling in a northerly direction, into Ninth Street. The situs of the accident seems to have been in an outlying district of the city of Madera. He proceeded easterly on Ninth Street to a point between twenty and twenty-five feet from the westerly rail of a side-track of defendant Southern Pacific Company which intersects Ninth Street, and there brought his car to a stop to permit a freight train to pass. No signal of any kind was maintained at the intersection. The freight train was moving south at a speed of five or six miles an hour, and six or eight cars remained to pass the intersection when Ireland brought his truck to a stop. East of the side-track and parallel thereto was the main-line track of the Southern Pacific Company. The distance between the center line of the side-track and the center line of the main track was thirteen feet. Both Ireland and decedent had resided in Madera for many years and Ireland testified as to his familiarity with the crossing. Doubtless the decedent was also generally familiar with existing conditions. The moment the caboose, which was the rear car of the freight train, cleared the crossing Ireland started his truck and crossed the side-track and in an attempt to cross the main track the auto truck was struck by the Fresno Flyer, northbound, which was traveling on the main track at a rate of speed estimated to be about fifty-five miles an hour. The accident happened so quickly that not more than an interval of a second intervened between the time Ireland saw the train and the time his truck was hit by it. He looked before starting, but the outgoing freight train blocked a view of the main track, and consequently his view to the

south was obstructed and he did not see the approaching passenger train. He listened, but did not hear the passenger train because of the noise made by the passing freight train. The distance which the passenger train traveled before it could be brought to a stop furnishes some evidence as to the speed at which it was moving. Upon cross-examination by counsel for the co-defendant, Southern Pacific Company, Ireland testified that both he and Smellie looked before Ireland started the truck and Smellie, who was seated by his side, said, 'It's all clear, let's go.' The testimony of Ireland was not contradicted by that of any other witness. Respondents did not offer any evidence in their own behalf, but upon the conclusion of plaintiffs' case made motions for nonsuits and directed verdicts, and the court granted the motions for directed verdicts, upon which judgment appealed from was entered.

"In granting defendants' motion for a directed verdict, the trial judge expressly stated that he discarded entirely the testimony of the defendant Ireland, that deceased had said to him just before the truck was started on its fatal trip across the railroad tracks, 'It's all clear, let's go.' He based his order for a directed verdict upon the facts and circumstances shown by the evidence to have existed at and immediately prior to the collision, leaving entirely out of consideration the statement of Ireland that the deceased had said 'It's all clear, let's go.' The trial judge disregarded this testimony of Ireland for the reason, as stated by him, that the jury in the case, if the cause should be submitted to them for decision, had the right, if they disbelieved the testimony of Ireland, to reject the whole of it. Notwithstanding the fact that the trial court disregarded the statement of Ireland as to what the deceased said just prior to the collision, the respondents have insisted during all the stages of this appeal that the statement attributed to the deceased by the defendant Ireland was not only properly before the court, but that it of itself furnished sufficient legal grounds to justify the order of the trial court directing a verdict in favor of the respondents. In so doing, however, respondents have not abandoned the ground upon which the trial court granted said motion, and they still insist that the order granting a directed verdict

should be affirmed irrespective of any question of this testimony of the defendant Ireland.

"In our former opinion . . . in bank, the judgment was affirmed upon the ground that the evidence before the court, inclusive of that given by the defendant Ireland as to the last words of the deceased showed, as a matter of law, that said deceased was guilty of contributory negligence. The rendition of this opinion brought forth not only a petition for a rehearing from the appellants and an answer thereto by the respondents, but numerous *amici curiae* have been granted permission, and have taken advantage of such leave, to file briefs in support of the respective contentions of the parties hereto.

"The legal battle thus waged by these various participants has centered around Ireland's testimony as to the decedent's last words, 'It's all clear, let's go,' and the force and effect to be given to this testimony. The appellants, and those *amici curiae* arrayed on the side of the appellants, contend that the testimony of Ireland in this regard only produced a conflict in the evidence upon the question of whether the deceased was guilty of contributory negligence, and therefore it was the duty of the court to disregard this conflict and submit the case to the decision of the jury. The basis of this argument by the appellants, and those allied with them, is that the plaintiffs at the trial in the lower court were entitled to avail themselves of the presumption that the deceased took ordinary care of his own · concerns (sec. 1963, subd. 4, Code Civ. Proc.), and that the testimony of Ireland as to the statement made by the deceased only produced a conflict in the evidence, which conflict, upon a motion for a directed verdict, the court was in duty bound to disregard and submit the issue thus tendered to the consideration of the jury.

"On the contrary, the respondents, and those *amici curiae* supporting the cause of the respondents, contend that the presumption relied upon by appellant, being merely a disputable presumption was entirely overcome and dispelled by the testimony of Ireland, and therefore that the undisputed evidence before the trial court showed that the deceased was guilty of contributory negligence in that he advised Ireland that the way was clear and that they should proceed to cross the railroad tracks. Accordingly, the respondents

and those *amici curiae* insist that the order of the trial court in directing a verdict upon this state of the evidence was proper and that the judgment based thereon should be affirmed.

"The question is, therefore, directly raised and presented as to whether this presumption, that the deceased exercised due care for his safety, has been overcome and dispelled as a matter of law by the testimony of Ireland. ▮ That a presumption is evidence and may in certain cases outweigh positive evidence adduced against it has long been the settled law of this state. (*People* v. *Milner*, 122 Cal. 171 [54 Pac.. 833] ; *Sarraille* v. *Calmon*, 142 Cal. 651 [76 Pac. 497] ; *People* v. *Siemsen*, 153 Cal. 387 [95 Pac. 863] ; *Pabst* v. *Shear*, 172 Cal. 239 [156 Pac. 466] ; *Thompson* v. *Davis*, 172 Cal. 491 [157 Pac. 595] ; *Gilmour* v. *North Pasadena Land etc. Co.*, 178 Cal. 6 [171 Pac. 1066] ; *Olsen* v. *Standard Oil Co.*, 188 Cal. 20 [204 Pac. 393] ; *Mar Shee* v. *Maryland Assur. Corp.*, 190 Cal. 1 [210 Pac. 269] ; *Pacific Portland Cement Co.* v. *Reinecke*, 30 Cal. App. 501 [158 Pac. 1041] ; *Grantham* v. *Ordway*, 40 Cal. App. 758 [182 Pac. 73].)

"A few quotations from the foregoing authorities will, we think remove all doubt from this question. In *People* v. *Milner, supra,* at page 179, the court said, 'Against a proved fact, or a fact admitted, a disputable presumption has no weight, but where it is undertaken to prove the fact against the presumption, it still remained with the jury to say whether or not the fact has been proven; and, if they are not satisfied with the proof offered in its support, they are at liberty to accept the evidence of the presumption.' In *Sarraille* v. *Calmon, supra,* at page 655, the court said, 'The presumption of nonpayment arising from possession of uncanceled notes, admittedly executed by defendant, was evidence that they were not paid, and produced a conflict with the evidence of defendant's witnesses.' In *People* v. *Siemsen, supra,* at page 390, we find the following language : 'But the court, in determining whether or not to accept Mr. Greeley's testimony, had a right to consider the presumptions raised by law. One of these in that "official duty has been regularly performed"; another, that "a writing is truly dated" . . . these presumptions, while disputable, are in themselves evidence (citing authorites), and will support a finding made in accordance with them, even

though there be evidence to the contrary.' In *Pabst* v. *Shearer, supra*, at page 242, this court stated the rule as follows: 'It must be remembered that a presumption declared by statute, although disputable, is itself evidence, and that it is for the trial court to say whether the evidence offered to overthrow the presumption has sufficient weight to effect that purpose.' In *Thompson* v. *Davis, supra*, at page 493, this court again said: 'Under the express provisions of section 164 of the Civil Code, as that section has read since the year 1897, such deed to the wife raised the presumption that the title was thereby vested in her as her separate property. This presumption is, to be sure, not conclusive. ''It may be overcome by evidence sufficient to satisfy the court that the property in question, although conveyed to the wife, was, in fact, community property.'' (Citing authority.) But the presumption, ''although disputable, is itself evidence, and . . . it is for the trial court to say whether the evidence offered to overthrow the presumption has sufficient weight to effect that purpose''.' In *Olsen* v. *Standard Oil Co., supra*, at page 24, this court sustained an instruction in the following words: 'The presumption is that every man obeys the law, and the presumption in this case is that the plaintiff was traveling at a lawful rate of speed and on the proper side of the highway at all times. This presumption is in itself a species of evidence and it shall prevail and control your deliberations until and unless it is overcome by satisfactory evidence.' In *Pacific Portland Cement Co.* v. *Reinecke, supra*, at page 504, we find the following language: 'The presumptive evidence of the time of the making of the endorsement and guarantee and the consideration therefor, may be resorted to in aid of the findings, even though it be assumed, as counsel for the defendant contends, that it stands alone and was opposed by direct evidence to the contrary. The general rule that, as against a proved fact, or a fact admitted, a disputable presumption has no weight, is subject to the exception that where, as in the present case, an endeavor is made to establish a fact contrary to the presumption, the fact in dispute still remains to be determined upon a consideration of all of the evidence, including the presumption.' In *Mar Shee* v. *Maryland Assur. Corp., supra*, at page 7, this court has again said: 'There seems to be some confusion in the decisions of this state with respect

to the extent to which, under various circumstances, presumptions of law are to be regarded as evidence of facts. The code expressly declares them to be evidence (Code Civ. Proc., secs. 1957, 1963), and admonishes the trial judge to instruct the jury on all proper occasions "that they are not bound to decide in conformity with the declarations of any number of witnesses, which do not produce conviction in their minds, against a . . . presumption". (Code Civ. Proc., sec. 2601, subd. 2.) Among the decisions of this court recognizing and applying the foregoing rule may be mentioned the following: *Sarraille* v. *Calmon,* 142 Cal. 651 [76 Pac. 497]; *Adams* v. *Hopkins,* 144 Cal. 19 [77 Pac. 712]; *Moore* v. *Gould,* 151 Cal. 723 [91 Pac. 616]; *People* v. *Seimsen,* 153 Cal. 378, 390 [95 Pac. 863]; *Freese* v. *Hibernia Sav. etc. Soc.,* 139 Cal. 392 [73 Pac. 172]; *Gilmour* v. *North Pasadena Land etc. Co.,* 178 Cal. 6 [171 Pac. 1066]."

We pause at this point to consider certain contentions especially stressed by the respondents on rehearing. It is insisted that the language of subdivision 2 of section 2061 of the Code of Civil Procedure contained in the foregoing quotation from the Mar Shee case is entirely inappropriate to constitute a presumption as evidence in a civil case. The contention seems to be that the use of the words "which do not produce conviction in their minds", as applied to a civil jury case, would give the presumption a weight which could only be overcome by evidence "producing conviction" in the minds of the jurors, and that this would be equivalent to the requirement that the proof against the presumption must be to a moral certainty, whereas in a civil case proof by a preponderance of the evidence is all that is required. In order to overcome the presumption of innocence in a criminal case the proof must, of course, be to a moral certainty and beyond a reasonable doubt, and when the language of subdivision 2 of this section is considered apart from the other provisions of the same section or of other sections of the code, and apart from the great body of the law of this state on the subject, there would seem to be some merit in the respondent's position. But when we turn to subdivision 5 of the same section (2061) we find that the distinction between the proof required in a civil case and a criminal case is carefully pointed out and the jury is to be instructed accordingly. We then turn to sec-

tion 1957 of the same code and find that presumptions are declared to be evidence, indirect evidence, it is true, but nevertheless a species of evidence sufficient to settle a question of fact in the absence of "ascertained and established facts". (*Lincoln* v. *French*, 105 U. S. 614 [26 L. Ed. 1189].) Much confusion in the argument has arisen because of the failure to consider the distinction between the proof offered to overcome the presumption, resulting in a conflict in the evidence, and the fact as ascertained and established. In the Mar Shee case it was held that a fact is proved against a party relying on the presumption "by the uncontradicted testimony of the party himself, or of his witnesses, under circumstances which afford no indication that the testimony was the product of mistake or inadvertence, and that when the fact so proved is wholly irreconcilable with the presumption sought to be invoked, the latter is dispelled and disappears from the case." This is undoubtedly true, but it does not necessarily follow that the presumption may not be overcome or "dispelled" as a matter of law by proof of the party against whom the presumption is invoked. For example: Subdivision 26 of said section 1963 declares the disputable presumption "that a person not heard from in seven years is dead". When the issue is whether a certain person is living or dead, as might be the case (see *Benjamin* v. *District Grand ‘Lodge, etc.*, 171 Cal. 260 [152 Pac. 731]; *Ashberry* v. *Sanders,* 8 Cal. 62 [68 Am. Dec. 300]), the proof of the plaintiff at the trial might be overwhelming and uncontradicted that the person whose status was involved had not been heard from in seven years, whereupon the plaintiff would rest. The defendant would then proceed by ushering into the courtroom the person involved in the controversy, known by court, jury and counsel to be such person, or otherwise conclusively proved to be such,. and present him to the court and jury as one alive and in being. Under such circumstances it would be absurd to submit the issue of the life or death of such person to the jury. Another case illustrating the point is *Clendenning* v. *Parker*, 69 Cal. App. 685 [231 Pac. 765]. It is obvious that such cases are exceedingly rare. ■ But when the rules applicable to nonsuit and directed verdict come into operation and we have a showing on behalf of the plaintiff of the facts and circumstances of the case and the presumption relied upon, on the

one hand, and the evidence offered on behalf of the defendant, the evidence produced by the defendant and favorable to his cause is eliminated from consideration for the purpose of the ruling of the court.

 It is argued by the defendants that since the statute itself (sec. 1963, Code Civ. Proc.), before enumerating the disputable presumptions, declares that said presumptions "are satisfactory, if uncontradicted" and that they "may be controverted by other evidence", it must follow that if they are contradicted or controverted they fade out and disappear from the case. As has been seen they do disappear when contradicted or controverted by the evidence of the party relying upon them, with the qualification stated in the Mar Shee case, but it is not correct to say that under the code section and the effect given to it by the court they vanish from the case as a matter of law when contradicted or controverted by the party against whom they are invoked. In such case their guiding and compelling effect is undermined and diminished or destroyed to the extent that they are controlled by the facts as found to exist.

 It is also contended by the defendants that while the legislature, under the Constitution, may, by the creation of a presumption, control procedure and the burden of proof, yet when it assumes to declare a presumption to be weighed against evidence of contrary facts the due process clause of the federal Constitution is violated. Supporting this contention the defendants cite *Western & Atl. R. Co.* v. *Henderson,* 279 U. S. 639 [73 L. Ed. 884, 49 Sup. Ct. Rep. 445]. That case involved the validity of a statute of Georgia which provided that a railroad company should be liable for any damages done to persons or property by the running of its locomotives, cars or other machinery, unless the company should make it appear that their agents had exercised all ordinary and reasonable care, "the presumption in all cases being against the company". The plaintiff brought the action for the alleged wrongful death of her husband, who was killed by a train at a railroad and highway crossing. The trial court instructed the jury that when it had been made to appear that the injury or damage occurred by reason of the operation of a locomotive and train of cars of a railroad company, "the presumption arises that the railroad company and its employees were negligent in

each of the particulars specified in the plaintiff's petition; and the burden thereupon shifts to the railroad company to show that its employees exercised ordinary care and diligence in the particulars wherein they are alleged to have been negligent, and, unless it does so, the fact of the injury or damage having been made to appear, the plaintiff . . . would be entitled to recover''. The jury was further instructed that, while the burden was upon the plaintiff to establish her contentions by a preponderance of the evidence, it was ''subject to the qualification already given you, that, when the fact of the killing has been made to appear, the presumption arises that the defendant company was negligent in each of the particulars specified in the petition . . . '' The construction placed upon the statute by the courts of Georgia in sustaining such an instruction led the Supreme Court of the United States to state concerning the effect of the statute as follows: ''Upon the mere fact of collision and resulting death, the statute is held to raise a presumption that defendant and its employees were negligent in each of the particulars alleged, and that every act or omission in plaintiff's specifications of negligence · was the proximate cause of the death; and it makes defendant liable unless it showed due care in respect of every matter alleged against it. And, by authorizing the jury, in the absence of evidence, to find negligence in the operation of the engine and train, the court necessarily permitted the presumption to be considered and weighed as evidence against the testimony of defendant's witnesses tending affirmatively to prove such operation was not negligent in any respect;'' and the statute, with the construction placed upon it by the state courts, was held to be in violation of the due process clause.

The laws of this state have never gone to the extent denounced by the Supreme Court in the Henderson case. It might be observed, however, that had the deceased in that case been killed while a passenger on and by reason of the operation of the train of the railroad company, the doctrine of *res ipsa loquitur* would undoubtedly have operated to establish a *prima facie* case of negligence. But even then the facts and circumstances of the killing would have to appear in evidence, and not merely the allegations of the complaint without evidence to support them.

■ In this state the facts and circumstances of the killing must be in evidence. When in evidence they are aided by the statutory presumption as a species of evidence in behalf of the party relying upon it. When the presumption is invoked by a party and his evidence is not inconsistent therewith, it is in the case, provided, of course, the evidence sufficiently establishes a sphere or field within which the presumption can operate. Whether it does must, of course, be decided by the trial court as a question of law.

This brings us to the point of considering the effect of the testimony of the defendant Ireland. Conceding it to be contradictory to and inconsistent with the presumption, did it merely produce a conflict in the evidence, or did it overcome and dispel it?

■ "In the present action, as already stated, Ireland, although examined by the plaintiff, was called under section 2055 of the Code of Civil Procedure. This section reads as follows: 'A party to the record of any civil action or proceeding or a person for whose immediate benefit such action or proceeding is prosecuted or defended, or the directors, officers, superintendents or managing agent of any corporation which is a party to the record, may be examined by the adverse party as if under cross-examination, subject to the rules applicable to the examination of other witnesses. The party calling such adverse witness shall not be bound by his testimony, and the testimony given by such witness may be rebutted by the party calling him for such examination by other evidence. Such witness when so called, may be examined by his own counsel, but only as to the matters testified to on such examination.'

"It will be noted that this section provides in the first place that a party to the record 'may be examined by the adverse party as if under cross-examination'. Furthermore, 'the party calling such adverse witness shall not be bound by his testimony, and the testimony given by such witness may be rebutted by the party calling him for such examination by other evidence.'

"This section of the code was enacted in 1917. Prior to its enactment, a party might call an adverse party as a witness if he desired to do so, but he was obliged to call him as his own witness, and he was bound by his testimony in the same manner and to the same extent as he was by other witnesses called by him. This rule often worked a

hardship on litigants, and often prevented the true facts of the case from being brought out in the evidence. It was to temper the rigor of this rule that section 2055 of the Code of Civil Procedure was enacted. It is a statute remedial in character, and as such should receive a construction by the courts which will carry into effect and accomplish the intent and purpose of the legislature in enacting it. This intent was, as we read the section, to enable a party to an action to call an adverse party as a witness for the purpose of eliciting such facts as said witness may testify to which are favorable to the party calling him, without being bound by any adverse testimony which said witness may give. Only by such construction can the full remedial purposes of said legislation be effected. Not only so, but we think the express terms of said section clearly and plainly indicate that such was the purpose of the legislature in the enactment of said section. As before noted, the adverse party, when called as a witness, is examined by the party calling him 'as if under cross-examination' and the party calling him 'shall not be bound by his testimony'. It is difficult to conceive of language more direct and explicit. It can have but one meaning, in our opinion, and that is the meaning which we have above given to it. Such a witness does not stand in the same relation to the party calling him as does a witness who is called under ordinary conditions. He is more in the nature of a witness of the adverse party. A party is expressly forbidden to cross-examine his own witness [except by permission of the court as provided in section 2046 of the Code of Civil Procedure], but when he calls an adverse party as a witness he is expressly given the right to examine him under the rules of cross-examination. A party calling a witness under the ordinary rules of procedure is bound by the testimony of such witness, but by the express provisions of section 2055, Code of Civil Procedure, the very opposite rule prevails. Such a witness has none of the characteristics of a witness called by a party under the ordinary rules of procedure, but many of the characteristics of a witness called by the adverse party.

"This construction of section 2055, Code of Civil Procedure, is not new in this state. In *Cioli* v. *Kenourgios*, 59 Cal. App. 690, 697 [211 Pac. 838, 841], the present question was before the court, and it was held: 'The fact that the plaintiff called the alleged conspirators to the witness stand

did not compel approval by him of their testimony. He could use their appearance on the stand, their words, their acts—in fact anything they could furnish in his favor, and reject the rest. The salutary provision of section 2055 of the Code of Civil Procedure was designed .to prevent as far as possible parties to an action from perpetrating fraud and dishonesty. It strips them of former barriers used for shielding falsehood.'

"In the case of *Grantham* v. *Ordway, supra,* the plaintiff called as a witness one of the defendants, Ordway, under said section 2055. The action was one to recover damages for injuries sustained in an automobile accident, and was brought against said Ordway and the Pacific Acreage Company. The automobile was owned by the company, but was driven by its co-defendant Ordway at the time of the accident. Ordway testified that he was on business of his own at the time of the accident and that he was in no way acting for the company or transacting business for the company at the time. The trial court granted a nonsuit, and on appeal the judgment was reversed. A petition to have the case heard by the Supreme Court was denied. This case is on all fours with the present action.. It was written by Chief Justice Waste, then presiding justice of said District Court of Appeal, and was concurred in by Justice Richards, then on said court, and Justice Nourse, acting temporarily as a justice of said court. As to the construction to be placed on section 2055, Code of Civil Procedure, the court said: 'Furthermore, plaintiff is not bound by Ordway's testimony. "A party to the record of any civil action . . . may be examined by the adverse party as if under cross-examination, subject to the rules applicable to the examination of other witnesses. The party calling such adverse witness shall not be bound by his testimony, and the testimony given by such witness may be rebutted by the party calling him for such examination by other evidence." '

"That case is of further importance by reason of its ruling upon the question of whether the testimony of Ordway destroyed the presumption that the automobile was being used for the benefit of the Pacific Acreage Company by reason of its ownership thereof at the time of the accident. Upon this phase of that case the court said: 'The automobile being admitted to belong to the defendant Pacific

Acreage Company, a presumption arose that it was used for its benefit and on its own account. That presumption was not destroyed as a matter of law by the testimony of the defendant Ordway. "Even though his explanation of the use of the car would absolve him if credited, the question of whether it should be credited was one of fact for the jury." (Citing authorities.)' On this same subject the court in that case also said: 'Whenever under a given state of facts a presumption arises, such presumption is itself evidence. Courts and jurors are not bound to decide in conformity with the declaration of any number of witnesses, which do not produce conviction in their minds, against a less number, or against a presumption, or other evidence, satisfying their minds. (Code Civ. Proc., sec. 2061, subd. 2.) A presumption, even if disputable, will raise a conflict which is sufficient to support a finding made in accordance therewith, even though there be evidence to the contrary. Whether a presumption has been controverted is a question of fact. (Citing authorities.)'

"The effect of evidence given by an adverse party under section 2055 was commented on by this court in the recent case of *Marchetti* v. *Southern Pac. Co.*, 204 Cal. 679, 686 [269 Pac. 569, 532]. In that case we said: 'While the two trainmen, who were called for cross-examination under section 2055 of the Code of Civil Procedure, testified that they gave the required signals, both by ringing the bell and sounding the whistle, the plaintiffs, especially upon a motion for a nonsuit, would not be concluded by their evidence, it being the duty of the court upon a motion for a nonsuit to accept the evidence most favorable to the plaintiffs.'

"As opposed to the foregoing rule and the authorities cited in support thereof, the respondents rely principally upon the case of *Figari* v. *Olcese*, 184 Cal. 775 [15 A. L. R. 192, 195 Pac. 425, 428], but we find nothing in that case contrary to the views hereinbefore expressed, or to the authorities last cited. In that case the court held, upon the trial of an action in which the evidence had been produced by the calling of an adverse witness under section 2055 of the Code of Civil Procedure, that the evidence of such witness might be given its proper weight in the final determination of the issues of the case. As bearing out our construction of said section, this court in that case held:

'In other words, such evidence is to be treated as though given on cross-examination.'

"Neither do we think that in any of the following cases, cited by respondent, is there anything to be found which is contrary to the construction we have placed upon section 2055 of the Code of Civil Procedure: *Brown* v. *Chevrolet Motor Co.,* 39 Cal. App. 738 [179 Pac. 697]; *Preo* v. *Roed,* 99 Cal. App. 372 [278 Pac. 1052]; *Andrews* v. *Waldo,* 205 Cal. 764 [272 Pac. 1052]; *Heiter* v. *Hirschfeld,* 205 Cal. 625 [271 Pac. 1051]; *Koster* v. *Southern Pac. Co.,* 207 Cal. 753 [279 Pac. 788]. In *Brown* v. *Chevrolet Motor Co.,* supra, and in *Koster* v. *Southern Pac. Ry. Co.,* supra, no reference is made to section 2055. While in the other cases witnesses were called under said section, no question was presented nor discussed in the opinion of any of these cases as to the force and effect of such evidence against a disputable presumption.

■ "Our conclusion, therefore, is that the testimony of a witness called under section 2055 of the Code of Civil Procedure is not, when weighing it against a presumption, to be considered, nor is it, really, evidence of the party calling such witness, and that the evidence thus produced does not dispel a presumption contrary thereto, but in favor of the party calling such adverse witness. This testimony is, of course, evidence in the case and may be considered in determining the issues of the case upon the trial or final hearing by the court, or if the case is before a jury, by the jury. When the action is before a jury, however, the duty of weighing this evidence is with the jury and not with the court upon a motion for a nonsuit or directed verdict.

■ "Besides the testimony of Ireland has certain elements of weakness which render it of doubtful probative value, and which, we think, present additional reasons why it should not, as a matter of law, be held to be conclusive of the fact to which it relates. In the first place it is the testimony of an adverse party, and a jury may disregard the testimony of such a witness as against a presumption if the latter satisfies them. (*Adams* v. *Hopkins,* 144 Cal. 19 [77 Pac. 712]; *Everett* v. *Standard Acc. Ins. Co.,* 45 Cal. App. 332 [187 Pac. 996]; *Keating* v. *Morrissey,* 6 Cal. App. 163 [91 Pac. 677].)

"Then again the testimony of Ireland related to a declaration of another person. Evidence of the declarations or oral admissions of a party are always received with caution. (Code Civ. Proc., sec. 2061, subd. 4.) The reason for this rule is that, 'In most cases it is impossible, however honest the witness may be, for him to give the exact words in which the declaration or admission was made. Sometimes even the transposition of the words of a party may give a meaning entirely different from that which was intended to be conveyed. The slightest mistake or failure of recollection may totally alter the effect of the declaration or admission.' (10 Cal. Jur., p. 1081; *Davis* v. *Davis,* 26 Cal. 23, 44 [85 Am. Dec. 157].)

"A third inherent weakness to be found in the testimony of Ireland is that it purports to give the statements or declarations of a deceased person. Regarding testimony of this character, this court said: 'The evidence is of oral admissions against interest by a man whose lips are sealed in death. What, then, does the law say of such evidence (assuming now its admissibility)? The Code of Civil Procedure declares (sec. 2061, subd. 4) that "the evidence of oral admissions of a party ought to be received with caution by a jury". In *Mattingly* v. *Pennie,* 105 Cal. 514 [45 Am. St. Rep. 87, 39 Pac. 200], this court in bank said, "No weaker kind of testimony could be produced." Again in bank (*Austin* v. *Wilcoxson,* 149 Cal. 24 [84 Pac. 417]) this court has said: "It is not stating it too strongly to say that evidence so given under such circumstances must appear to any court to be in its nature the weakest and most unsatisfactory." ' (*Estate of Emerson,* 175 Cal. 724, 727 [167 Pac. 149, 151].) We might go on and cite many other authorities, but the above are sufficient for our present purpose. To invoke a rule which would deprive a party of the right to have a jury pass upon the weight of evidence of this character would be contrary to an unbroken line of decisions of this court, and its effect would be in many instances to deprive a party to an action of the right, guaranteed to him by the law of this state, to a trial by jury.

"We are, therefore, of the opinion that the testimony of Ireland, as against the presumption that the deceased took ordinary care of his own concerns, was not sufficient as a matter of law to dispel said presumption, but,

on the other hand, merely tended to create a conflict with said presumption, which it was the right of the appellants to have passed upon by the jury in its final deliberations, and not by the court on a motion for a directed verdict.

"The respondent, the Southern Pacific Company, contends that as between it and the appellants the testimony of Ireland must be regarded as evidence of the appellants and, therefore, under the rule enunciated in *Mar Shee* v. *Maryland Assur. Corp.*, *supra,* it entirely overcame and dispelled the presumption of due care on the part of the deceased. Said respondent cites no authority to support this contention, and we think to assent to it would be to place an unauthorized limitation upon the remedial provisions of section 2055 of the Code of Civil Procedure.

"However, both the respondents contend that aside from the testimony of Ireland the evidence conclusively shows that the deceased was guilty of contributory negligence in not avoiding the danger which was apparent to him from the presence of the railroad track.

"We have already set forth a general statement of facts in the first part of this opinion. There are minor details not included in the foregoing general statement, but we do not think that it will be necessary to set the evidence out more fully than has already been done. From the facts as they are contained in the record, it appears that the defendant Ireland was in sole control of the truck in which he and the deceased were riding just prior to and at the time of the collision; that the deceased was merely a guest of Ireland; and that the deceased was in no degree responsible for Ireland's driving his truck in front of the approaching train. Under such circumstances the negligence of Ireland cannot be imputed to the deceased. (*Carpenter* v. *Atchison etc. Ry. Co.,* 51 Cal. App. 60 [195 Pac. 1073]; *Ilardi* v. *Central California T. Co.,* 36 Cal. App. 488 [172 Pac. 763]; *Nichols* v. *Pacific Elec. Ry. Co.,* 178 Cal. 630 [174 Pac. 319]; *Bresee* v. *Los Angeles Traction Co.,* 149 Cal. 131 [5 L. R. A. (N. S.) 1059, 85 Pac. 152]; *Tousley* v. *Pacific Elec. Ry. Co.,* 166 Cal. 457 [137 Pac. 31]; *Marchetti* v. *Southern Pac. Co.,* 204 Cal. 679 [269 Pac. 529].) It follows, therefore, that there must have been some act performed by the deceased, or a fail-

ure to do some act required of him, which proximately contributed to his death, before he could be held to be guilty of contributory negligence. The evidence is silent as to any overt act on the part of the deceased, aside from the statement of Ireland already quoted, which, in the least degree, can be said to show that the deceased was guilty of negligence. As to his failure to take the precautions which a person of ordinary prudence would take in the position in which he was placed in order to avoid the danger incident to the crossing of the railroad track under the circumstances shown, we think the evidence is far from satisfactory. There is no evidence that he did not look and listen for the train. In fact, the evidence is to the contrary. Ireland, after the freight train had passed, according to his own statement as shown in evidence, 'pulled right in behind the caboose' and started across the tracks. The distance between the center lines of the two tracks was only thirteen feet. Ireland after starting the last time did not stop until he was on the main track, when he was hit by the northbound train. It must all have happened in a very few seconds of time. Of course, as respondents suggest, the deceased might have stepped from the car before Ireland started it up the last time. But there is no evidence that he then knew, or had any reason to believe, that Ireland intended to cross the tracks without looking for the approaching train. If he were ever aware of Ireland's intention to cross the main track in front of the train, it must have been only an instant before Ireland actually drove upon the main track. It was evidently then too late for him to leave the machine or to otherwise avoid the danger. Under these circumstances, we seriously doubt whether the action of the deceased just preceding the collision amounted as a matter of law to contributory negligence on his part. In the recent case of *Shields* v. *King*, 207 Cal. 275 [277 Pac. 1043], we quoted with approval the following rule enunciated in prior decisions of this court: [16] 'The duty of a passenger to remonstrate against excessive speed or to withdraw from the vehicle, a reasonable opportunity therefor being afforded, is not absolute, the question of whether by failing to do either he is wanting in ordinary care being dependent upon the circumstance of the particular case. Contributory negligence is a question of law only when the court is impelled to say that

from the facts reasonable men can draw but one inference and that an inference pointing unerringly to the negligence of the plaintiff contributing to the injury. . . . In all other cases the question of contributory negligence is a question of fact for the jury. (*Flores* v. *Fitzgerald*, 204 Cal. 374 [268 Pac. 369]; *Borland* v. *Key System Transit Co.*, 205 Cal. 153 [270 Pac. 194].)'

"The respondents, in support of their contention that the deceased was guilty of contributory negligence, cite the two cases of *Heitman* v. *Pacific Elec. Ry. Co.*, 10 Cal. App. 397 [102 Pac. 15], and *Barnett* v. *Atchison etc. Ry. Co.*, 99 Cal. App. 310 [278 Pac. 443]. In the first of these two cases the deceased and one Caseboom was associated in the transfer business. They were riding together in a wagon drawn by a pair of mules with Caseboom driving. They drove upon the railroad tracks of the defendant, and a collision occurred between the car of the defendant and the wagon in which Caseboom and the deceased were riding. It was conceded in that case 'that the negligence of the driver of the mules is to be imputed to and regarded as the act of the deceased'. In view of this admission, the only question passed upon by the court in that case was whether or not the driver was guilty of negligence. That case, therefore, can have no bearing upon the question before us, which concerns entirely the negligence of one who was riding as a guest.

"In the case of *Barnett* v. *Atchison etc. Ry. Co.*, *supra*, five men were in an automobile, one of whom was driving said machine. They were all held to be guilty of contributory negligence. In that case, however, the automobile was being backed upon the railroad track by the driver at a speed of about five miles per hour. All of the men were perfectly familiar with the conditions surrounding the crossing and knew of the frequency of trains on the track. The bell of the engine was ringing continuously. Six or seven hundred feet from the crossing the engineer had blown the station whistle, and when the automobile was approximately fifteen feet from the track the engineer sounded four sharp warning whistles. While they were thus approaching the crossing the driver was looking to the left and to the rear of his machine. The three men in the rear seat of the machine had their heads down and were examin-

ing some minnows in a sack on the floor of the machine. None of them either looked or listened for an approaching train before their machine was driven onto the railroad track, or took any other precaution whatever to observe the danger into which they were being driven. Parks, who was not a party to said action, and who was on the front seat with the driver, observed the train and called to his companions to jump. He jumped free of the machine and was not injured. The three men in the rear seat and the driver were seriously injured and three of them died as a result of their injuries. No mention of the rule applicable to guests is to be found in that entire case. The four men injured were treated as if they were equally guilty of negligence. The uncontradicted evidence shows that none of these made any attempt whatever to ascertain the presence of the train upon the track or to escape from the danger into which they were heedlessly running. . . .

"Neither of these cases, in our opinion, is applicable to the facts in the present action. The facts before us do not, we think, point unerringly to the negligence of the deceased. . . . Under these circumstances we think it was for the jury to say as a matter of fact, and not for the court to hold as a matter of law, whether the deceased was guilty of contributory negligence."

The judgment is reversed.

Preston, J., Curtis, J., Waste, C. J., and Langdon, J., concurred.

RICHARDS, J., Concurring and Dissenting.—I concur in the judgment of reversal herein upon the ground that the trial court in directing a verdict for the defendant did so upon a state of the evidence which was insufficient to justify such order, if, as the trial court instructed the jury, the testimony of the witness Ireland was to be disregarded by it in returning such directed verdict. In stating the evidence which furnished the ground upon which the order for a directed verdict was based, the trial court expressly stated to the jury that it should "disregard entirely the question of what Ireland may have said to Smellie". The error which the trial court thus committed in directing the jury to disregard Ireland's testimony in returning their directed verdict could not be cured by the succeeding error

which the jury committed in following such instruction and in returning a verdict upon other evidence which was insufficient to establish the contributory negligence of the deceased as a matter of law.

I dissent, however, from that portion of the main opinion holding that the presumption that the deceased took ordinary care of his own concerns persisted so far as to constitute a conflict in evidence, notwithstanding the direct testimony of the witness Ireland to a fact which controverted that presumption. It seems to me indisputable as a matter of law, supported by innumerable authorities, that if the witness Ireland had been called by the plaintiffs on their own account and as their own witness, and not under the provisions of section 2055 of the Code of Civil Procedure; and if as such witness he had given the testimony which he did give with respect to the words and acts of the deceased immediately prior to the casualty in which he lost his life, the presumption above referred to would have disappeared from the case. It also seems to me that the same result would follow upon the introduction of the same testimony by either or any of the parties to the action if, at the close of the case, such evidence stood in the record unrebutted and uncontradicted and if the witness giving the same had been unimpeached. This conclusion, as I shall show, is supported by a long course of well-reasoned decisions which ought not to be, as it is in the main opinion, disregarded and overthrown. It is, however, claimed in the main opinion that the foregoing rule, otherwise well founded, does not apply to cases wherein the plaintiff calls a witness under the provisions of section 2055 of the Code of Civil Procedure, and wherein such witness when so called testifies to facts which, had he been called and testified on behalf of the plaintiffs otherwise than under the terms of said section, would have sufficed to dispel the presumption. The basis of this claim as set forth in the main opinion is furnished by the clause in section 2055 of the Code of Civil Procedure, which states that, "The party calling such adverse witness shall not be bound by his testimony, and the testimony given by such witness may be rebutted by the party calling him for such examination or by other evidence." The parties to a civil action are bound by the direct evidence of the witnesses therein, as to which they

offer no impeachment of such witnesses, and the testimony of which they neither seek to rebut nor controvert. This must be so; otherwise there could never be any such thing as a directed verdict in favor of either party, or a nonsuit against the plaintiff in any case in respect to which a disputable presumption was claimed to exist in favor of or against either or any of the parties thereto. Section 1844 of the Code of Civil Procedure, states: "The testimony of one witness who is entitled to full credit is sufficient for proof of any fact except perjury or treason." Section 1959 of the Code of Civil Procedure, defines a presumption to be a deduction which the law expressly directs to be made from particular facts; and while section 1957 classes presumptions as a form of indirect evidence, section 1961 declares that "A presumption, unless declared by law to be conclusive, may be *controverted* by other evidence, direct or indirect; but unless so *controverted* the jury are bound to find according to the presumption." Section 1962 defines conclusive presumptions, while section 1963 deals with all other presumptions, and in so doing states: "All other presumptions are satisfactory [that is to say, satisfactory evidence] if *uncontradicted*. They are denominated disputable presumptions and may be controverted by other evidence." The term "satisfactory evidence" is defined to be that evidence which produces conviction in an unprejudiced mind. (6 Words and Phrases, 3d series, p. 953.) The term "controvert" and "contradict" as used in the foregoing sections of the code are obviously used synonymously therein and the word "contradict" is also used with like meaning in sections 2049 and 2051 of said code. These words in their ordinary and usual sense carry the meaning of "oppose", "dispute", "take issue with", "assert the contrary of" (Webster's), or, as defined in 2 Words and Phrases, *supra,* pages 457, 482, mean "to deny or attempt to dispute or confuse". We are thus brought to the conclusion that a disputable presumption under the express terms of sections 1961 and 1963 of the Code of Civil Procedure, ceases to be satisfactory evidence, and as such no longer of binding effect in the case, when "controverted", "contradicted", "disputed", "opposed", "denied," or "taken issue with" by the production in the case of other evidence, direct or indirect. This means nothing

more nor less than that when such evidence as to the fact in issue appears and is presented, the presumption is dispelled and disappears. Such was the rule laid down by Chief Justice Field in the early case of *Nieto* v. *Carpenter,* 21 Cal. 455, 487. Such was the conclusion reached by this court in *Savings etc. Soc.* v. *Burnett,* 106 Cal. 514, 530 [39 Pac. 922, 925], wherein, with reference to such presumptions, it was stated: "They are allowed to stand not against the facts they represent, but in lieu of them. The facts being proven, no conflict arises, the presumption is simply overcome and dispelled." Such was the decision of this court in *Larrabee* v. *Western Pac. Ry. Co.,* 173 Cal. 743, 746 [161 Pac. 750, 751], wherein this court said: "But touching the presumption that the deceased exercised ordinary care, it is to be noted that that presumption is given weight only in the absence of evidence on the subject of the deceased's conduct. It has been declared to be an artificial presumption of so weak a character that it is not to be allowed to have the effect of evidence before the jury where the uncontradicted evidence of the circumstances attending the accident overthrows it." Such was the ruling of this court in the very recent case of *Koster* v. *Southern Pac. Co.,* 207 Cal. 753 [279 Pac. 788]. Such, also, was the ruling of this court in the instant case and in the decision therein, which I then concurred in, and which I still maintain should constitute the law of this case.

With this background of sound precedent I pass without further comment those cases beginning with *People* v. *Milner,* 122 Cal. 171 [54 Pac. 833], and followed by the further line of cases quoted with approval in the main opinion in which this court has in the past been led astray from the foregoing salutary doctrine, and from the heresies of which we should now return to the orthodoxy of the long line of decisions only a few of which I have above referred to.

I conclude that a consideration of the proper meaning to be given to the terms of section 2055 of the Code of Civil Procedure, as that meaning was rightly interpreted in the case of *Figari* v. *Olcese,* 184 Cal. 775 [15 A. L. R. 192, 195 Pac. 425, 428], wherein the defendant had been called as a witness for plaintiff under the provisions of said section of the code, and wherein this court said: "Section 2055 of the Code of Civil Procedure provides that a party calling and

examining as a witness an adverse party 'shall not be bound by his testimony', and that the testimony of such adverse witness 'may be rebutted by the party calling him', is that this provision does not mean that such testimony may not be given its proper weight, but merely, as it declares, that the party calling such witness shall not be concluded from rebutting his testimony or from impeaching the witness.'' In the instant case the plaintiff did not attempt to do either of these things, with the result that the testimony of Ireland stood uncontradicted and also unimpeached by the only method provided for such impeachment of a witness under sections 2049 and 2051 of the Code of Civil Procedure. This being so, the presumption relied upon should be held to have been "controverted" and "contradicted" by the direct evidence of Ireland, and should therefore he held to have been dispelled.

The former decision of this court, rendered by Mr. Justice Seawell in department, should, in my opinion, be adopted and should stand as the main opinion of this court in its final decision of this cause.

SEAWELL, J., Concurring in Dissenting Opinion.— I am in accord with the statement of the law as herein made by Mr. Justice Richards as to the weight and sufficiency of presumptions as evidence when standing in contradiction of direct oral testimony. Of course, it was not intended by the legislature that an adversary witness called to the stand was, *ipso facto,* placed under the ban of suspicion. An adversary witness may be examined as a witness on cross-examination and such parts of his testimony as are not acceptable to the party calling him may be impeached in all the ways provided by law for the impeachment of a hostile witness. His testimony, however, stands as evidence in the case. Those portions which are not inherently improbable —in case the character of the witness is not impeached— may not be arbitrarily disregarded, but stand as evidence sufficient to overcome a presumption of the kind appearing in the instant case. The fact that the adversary party is called in no manner places him in the class of impeached witnesses, and unless he is impeached or his testimony is rebutted by the party calling him his testimony is to have the same binding effect as that of any other witness testifying in the case.

I wish here to add my adherence to the first and original opinion rendered in this cause and which was, upon rehearing, again adopted as the opinion of the court. The facts as they were therein claimed to be are fully and correctly set forth. The law as therein declared, founded upon the wisdom and experience of ages, has the approval and sanction of state and federal courts wherever the subject of the weight and effect of presumptions has been drawn to judicial attention. The authorities are too multitudinous to attempt citation.

Rehearing denied.

Seawell, J., and Richards, J., dissented.