[Civ. No. 6374. Fourth Dist. Jan. 17, 1961.]

NORA AGUILERA, a Minor, etc., et al., Appellants, v. ATCHISON, TOPEKA AND SANTA FE RAILWAY COMPANY (a Corporation) et al., Respondents.

W. W. McCray and Ernest F. Shelander for Appellants.

Robert W. Walker, Richard K. Knowlton, Henry M. Moffat and John Neil Stanley for Respondents.

SHEPARD, J.—Plaintiffs brought this action for damages for the death of Angel Aguilera, which occurred in a railway crossing accident. Nonsuit was granted at the close of plaintiff's evidence, and plaintiffs appeal.

## Nonsuit Evidence Rule

The rule is that on a motion for nonsuit at the close of the plantiff's evidence, the evidence must be viewed in the light most favorable to the plaintiffs, giving to the support of plaintiffs' case every applicable presumption of law and every inference reasonably deducible from the evidence; that all conflicts in the evidence are to be disregarded,

and that unless the evidence so viewed will not support a judgment in plaintiffs' favor, the nonsuit must be denied. (*Anthony* v. *Hobbie,* 25 Cal.2d 814, 817 [1] [155 P.2d 826]; *Mitchell Camera Corp.* v. *Fox Film Corp.,* 8 Cal.2d 192, 197 [2-3] [64 P.2d 946]; *Sunset Milling & Grain Co.* v. *Anderson,* 39 Cal.2d 773, 779 [8] [249 P.2d 24].)

### Nonsuit Contributory Negligence Rule

 Similarly, on a motion for nonsuit on the ground of contributory negligence as a matter of law, all evidence must be construed in the light most favorable to plaintiffs, with all applicable presumptions and all reasonable inferences indulged in on plaintiffs' behalf and all conflicts in evidence disregarded. The burden of proving contributory negligence rests with the defendant. Viewing the evidence in the light most favorable to the plaintiffs, with conflicting evidence disregarded, and giving the plaintiffs the benefit of every applicable presumption and every favorable inference reasonably deducible from the evidence, a nonsuit may not be granted on the ground of contributory negligence unless the evidence so viewed unerringly points to contributory negligence and leaves no other reasonable hypothesis than that such contributory negligence did exist, was chargeable to plaintiffs, and was a proximate cause of the injury complained of. (*Anthony* v. *Hobbie, supra,* 818 [3]; *Toschi* v. *Christian,* 24 Cal.2d 354, 356 [1] [149 P.2d 848]; *Startup* v. *Pacific Electric Ry. Co.,* 29 Cal.2d 866, 871 [4b] [180 P.2d 896].)

### Facts

Viewing the evidence in this light, the facts as shown by plaintiffs' own evidence adduced by oral testimony and photographs and plaintiffs' complaint, are as follows: On September 3, 1958, at about 12:35 p. m. (midday), Angel Aguilera was driving a 1951 Ford stakebed truck at a point in Orange County where Oso Street proceeds westerly at a right angle from United States Highway 101. Parallel to and immediately west of United States 101 Highway are the mainline tracks of defendant railway. Oso Street does not cross or proceed east of Highway 101. It commences at this point on the westerly edge of Highway 101 and proceeds westerly. There are two railroad tracks. These tracks proceed north and south for as far as the camera eye depicts in the photographic evidence. Somewhere north of Oso Street there is a curve in the track. The evidence adduced by plaintiffs through cross-examination of defendant engineer and the map which is defendants' ex-

hibit, cannot be considered except insofar as it is advantageous to plaintiffs, in deciding the question of nonsuit, because such testimony must be deemed that of an adverse witness. (*Merlino* v. *Southern Pac. Co.*, 132 Cal.App.2d 58, 67 [8] [281 P.2d 583] ; *Anthony* v. *Hobbie, supra,* 818 [4] ; *Smellie* v. *Southern Pac. Co.*, 212 Cal. 540, 559 [10] [299 P. 529].)

However, from plaintiffs' own photographs and testimony, it can be said that the clear, unobstructed, straight line of view of the railroad tracks northerly from the Oso Street crossing of any train that might be thereon is at least ½ mile. Between the railroad and Highway 101 there is a single line of telephone poles at the usual widely spaced intervals. These offer no real obstruction to the sight of an approaching train. At the crossing on both sides of the railroad tracks there are the customary cross-arm railroad warning signs of white with large black letters bearing the words "RAILROAD CROSSING, 2 tracks, Santa Fe." The paint is in apparently good condition, for the bold lettering is sharp and clear. On the surface of Oso Street east of the tracks and opposite the crossing sign are two broad white painted stripes. The tracks are fully visible and the crossing is additionally apparent due to its raised character, appearing to rise at least 12 inches during the 40 feet from the edge of Highway 101 to the mainline track. A secondary track (apparently a switch track) must be crossed before reaching the main track.

It is not contended that the weather was not perfectly clear and dry, nor that it offered any impediment to vision. There is no suggestion that any other train was approaching, passing or nearing the crossing so as to divert the attention of the driver of the truck. Neither does the evidence indicate the presence of any vehicles, pedestrians, animals or things at or near the crossing to cause the driver's vision to be obscured or his attention to stray. Nothing in the evidence shows any traffic problem on Highway 101.

The driver, proceeding south on Highway 101, turned to his right into Oso Street at about 10 to 15 miles per hour. After he made the turn and before coming to the mainline track, he slowed his speed to 2 to 5 miles per hour. The whistle of the engine was testified to by the engineer as having been sounded at intervals for more than ½ mile away during most of the approach to the crossing and that the train was traveling at approximately 70 miles per hour, but again, this is adverse witness testimony under Code of Civil Procedure, section 2055, and his testimony must be ignored except insofar as it may be

advantageous to plaintiffs. The testimony of plaintiffs' own witnesses as to the whistle was merely the negative of not hearing without especially listening for a whistle, until three to five seconds before the locomotive reached the crossing. This places the whistle at least 300 feet from the crossing.

### Presumption of Due Care

Plaintiffs contend that the evidence thus adduced by them did not show contributory negligence as a matter of law; that the presumption of due care which attaches to and enshrouds the action of a deceased whose testimony has never been and cannot be obtained is sufficient to create a conflict compelling the matter to go to the jury for the weighing of the evidence as a question of fact.

The rule covering this type of situation is well settled in California. In substance, it is that where the disputable presumption of due care attaches, as it does in this case, the question of contributory negligence is one of fact for the jury unless the plaintiffs' own evidence, not the result of mistake or inadvertence, is such that there is no other reasonable hypothesis than that the deceased was, in fact, negligent, and that such negligence proximately contributed to the injury complained of. Stated in other words, that a nonsuit may not be granted unless a person could come to no other reasonable conclusion from such evidence than that such contributory negligence did, in fact, exist and did contribute proximately as a causative factor of the accident subject of the action. Stated in the affirmative, the rule is that if plaintiffs' own evidence, not the result of mistake or inadvertence, does unerringly point without contradiction to contributory negligence on the part of the claimants' deceased, which proximately contributed to the injury complained of, and when a reasonable person could come to no other conclusion, then there is no place for the presumption. It is displaced by such conclusive evidence and a nonsuit is proper. (*Mar Shee* v. *Maryland Assurance Corp.*, 190 Cal. 1, 8 [210 P. 269]; *Rogers* v. *Interstate Transit Co.*, 212 Cal. 36, 38 [1] [297 P. 884]; *Smellie* v. *Southern Pac. Co.*, supra, 555 [8]; *Westberg* v. *Willde*, 14 Cal.2d 360, 365 [2] [94 P.2d 590]; *Gigliotti* v. *Nunes*, 45 Cal.2d 85, 93 [3] [286 P.2d 809]; *Brandelius* v. *City & County of San Francisco*, 47 Cal.2d 729, 736 [7] [306 P.2d 432]; *Larrabee* v. *Western Pac. Ry. Co.*, 173 Cal. 743, 747 [161 P. 750]; *Mundy* v. *Marshall*, 8 Cal.2d 294, 296 [2] [65 P.2d 65]; *Powley* v. *Appleby*, 155 Cal.App.2d 727, 733 [3] [318 P.2d 712]; *Merey* v. *Los Angeles Transit*

*Lines,* 170 Cal.App.2d 457, 465 [2] [339 P.2d 211] ; *Shirk* v. *Southern Pac. Co.,* 103 Cal.App.2d 97, 100 [229 P.2d 100].)

The rule comes into play frequently in railroad crossing accidents because of the perfectly obvious character of the danger involved where the crossing is clear, unobstructed, visible and noticeable to any ordinary person. (*Levin* v. *Brown,* 81 Cal.App.2d 913, 916 [1] [185 P.2d 329] ; *Heintz* v. *Southern Pac. Co.,* 63 Cal.App.2d 699, 704 [1] [147 P.2d 621] ; *Dull* v. *Atchison, Topeka & Santa Fe Ry. Co.,* 27 Cal. App.2d 473, 476-477 [2] [81 P.2d 158] ; *Lazzarotto* v. *Atchison, Topeka & Santa Fe Ry. Co.,* 157 Cal.App.2d 455, 461 [3] [321 P.2d 29].)

In the case here at bar, we are under the uncontradicted facts of plaintiffs' own testimony, not confronted with any questions involving absence of a usually present flagman at a busy downtown intersection (*Toschi* v. *Christian, supra*) ; nor trains meeting at a crossing, thus obscuring the approach of one of the trains (*Murphy* v. *Atchison, Topeka & Santa Fe Ry. Co.,* 139 Cal.App.2d 792 [294 P.2d 458]) ; nor defective planning of the operation of a flasher signal by which a trap is created (*Merlino* v. *Southern Pac. Co., supra*) ; nor an angular crossing with cars being switched in the night without lights or warning in misty weather (*Lloyd* v. *Southern Pac. Co.,* 111 Cal.App.2d 626 [245 P.2d 583]) ; nor a trainman misdirecting pedestrians in a switchyard (*Green* v. *Southern Pac. Co.,* 53 Cal.App. 194 [199 P. 1059]) ; nor train without headlight in the confusion of different trains discharging passengers (*Smith* v. *Southern Pac. Co.,* 201 Cal. 57 [255 P. 500]) ; nor the innumerable variations of these and other situations creating questions of fact necessarily submitted for ultimate weighing by the jury or trial court.

▮ Here the uncontradicted evidence of plaintiffs shows a vehicle approaching a railroad crossing with obviously visible warning signs and marks on the road itself, the track itself being more than ordinarily noticeable, in clear weather at midday, with an unobstructed view for at least ½ of a mile straight up the track from which the train was approaching. The driver has no other vehicles, animals or objects in or about the crossing to distract his attention; no other train is approaching the crossing to divert his attention. The driver slows to 10 to 15 miles per hour in making the turn from Highway 101; he does not stop, although he continues to slow down, and he drives directly into the path of the locomotive. We do not even have the question of his misjudging the speed

and possibly thinking he could beat the train to the crossing, for it was the front part of the truck that was struck. We are not impressed by the speed of the train as the speed was not unlawful *per se*. This court would be indeed naive if it failed to take cognizance of the fact that for many years last past it has been incumbent upon every driver on any of the main trunk highways of the state and nation like United States Highway 101, to acquaint himself with and be able to judge, within reasonable bounds, the speed of the thousands of vehicles approaching at high speeds. Indeed, it seems not improper to say that under present highway conditions the ordinary driver is absolutely compelled for his own safety to be able to roughly judge such speeds within reasonable limits. If he cannot do so, he is not a safe driver for either himself or anyone else in our present high-speed world.

We are convinced that the trial court's assessment of the evidence was correct. The evidence points unerringly to only one conclusion and that is that the injury was proximately caused, at least in part, by the contributory negligence of the deceased driver.

In view of the conclusions above reached, it is unnecessary to discuss the other points raised by appellants.

The judgment is affirmed.

Griffin, P. J., and Coughlin, J., concurred.