[Civ. No. 20455. First Dist., Div. Two. July 11, 1963.]

LILY GENSBURGER, Plaintiff and Respondent, v. GLAFARA SHAPIRO et al., Defendants and Appellants.

James J. Duryea, William B. Boone, Bacon, Mundhenk, Stone & O'Brien, and Jack M. O'Brien for Defendants and Appellants.

Hoberg, Finger, Brown & Abramson, James B. Werner, Ingemar E. Hoberg and Michael J. Kennedy for Plaintiff and Respondent.

SHOEMAKER, J.—Defendants appeal from an order granting plaintiff's motion for a new trial.

Plaintiff Lily Gensburger brought this action to obtain damages for personal injuries sustained when she was scalded by hot water. Plaintiff was a tenant in an apartment house owned by defendants Glafara and Efim Shapiro, who employed defendant A. J. Lay to maintain and control the hot water supply. Plaintiff's complaint was that defendants had maintained the hot water supply so negligently as to cause excessively hot water to flow through the pipes, and that as a proximate result of this negligence, plaintiff, upon using the bath facilities in her apartment, was severely burned and scalded by excessively hot water coming from the shower head.

Defendants' answer denied the material allegations of the complaint and affirmatively asserted the contributory negligence of plaintiff.

Plaintiff testified that she was 61 years old, and had rented the apartment from defendants Shapiro in August 1957; that she took daily baths, and knew the hot water furnished was "very scalding" and that she had complained about it to Mrs. Shapiro. On the evening of December 7, 1957, the plaintiff stated she went to bed but was unable to sleep due to pain in her side. After attempting to alleviate the pain with a heating pad, she decided to get up and take a bath. At approximately 2 o'clock in the morning of December 8, 1957, she went into the bathroom and pro-

ceeded to draw the water for her bath. The bathtub fixtures consisted of three faucets or handles; the one closest to her was for hot water, the middle handle diverted the water either into the tub or into the overhead shower, and the third handle was for cold water. The plaintiff testified that she turned on both hot and cold water and allowed the mixture to run into the tub. Although normally right-handed, she found it easier to manipulate the handles with her left hand, and use her right hand to steady her balance as she leaned against the side of the tub. After turning on both the hot and cold water, she went out into the hallway to get a towel. Upon returning to the bathroom, she tested the tub water with her right hand, turned off the cold water, and allowed hot water to continue to run into the tub for a few seconds. She then tested the water temperature again and reached over to turn off the hot water with her left hand. As she turned the hot water handle, the water was diverted up through the shower, severely scalding her left shoulder and arm.

Defendants Shapiro testified that they had owned the apartment house for approximately 14 years, and that it consisted of 15 units. Since they were unfamiliar with the operation of water heating systems, they employed defendant Lay to maintain the water heater and to perform other janitorial services within the building.

Approximately two months after the accident, the hot water system for the building and the plumbing in the plaintiff's bathroom were examined by a plumber and an engineer who testified for the plaintiff. At the time of their examination, no changes had been made in the bathroom plumbing since the date of the accident. They found that the temperature of the hot water coming from the tub spout and the shower in the plaintiff's bathroom was 170 degrees. They also found that the hot and cold water faucets and the tub-shower diverting handle functioned properly. Upon examining the water heater in the basement of the apartment building, they found the thermostat on the heater set at 160 degrees. The thermometer on the water storage tank indicated a temperature of 150 degrees. The heating system had not been readjusted since the date of the accident. When defendant Lay was asked to observe the thermostat reading, he misread it as 140 rather than 160 degrees.

Upon this evidence, the jury returned a verdict in favor of all three defendants. Plaintiff then moved for a new trial

on the grounds of the insufficiency of the evidence to support the verdict, the improper refusal of one of plaintiff's instructions; misconduct on the part of opposing counsel, and irregularity in the proceedings in that an exhibit marked for identification only was delivered to the jury. The trial court granted the motion on the grounds of "insufficiency of evidence to justify verdict" and "prejudicial irregularities."

Appellants first contend that the order must be reversed because the evidence established as a matter of law that they were guilty of no negligence and that, in any event, respondent's contributory negligence was a proximate cause of her own injuries. Since this latter contention is clearly sound, it becomes unnecessary to determine whether or not appellants were negligent in supplying the tenants of the apartment house with water which was heated to a scalding temperature.

Contributory negligence is established as a matter of law if the plaintiff's own evidence is such that there is no other reasonable hypothesis than that the plaintiff was negligent and that such negligence proximately contributed to the injury complained of. (*Aguilera* v. *Atchison, T. & S. F. Ry. Co.* (1961) 188 Cal.App.2d 274, 278 [10 Cal.Rptr. 367].)

Stated differently, contributory negligence is established as a matter of law where the evidence points unerringly to that conclusion and where reasonable and sensible men could have drawn no other conclusion. (*Saeter* v. *Harley Davidson Motor Co.* (1960) 186 Cal.App.2d 248, 254 [8 Cal.Rptr. 747].)

In the instant case, respondent testified that she had used the bathtub facilities in her apartment daily for some four months prior to the accident. She further stated that she knew that the hot water supplied to her apartment was heated to a "scalding" temperature and that she had in fact complained to Mrs. Shapiro about it. Her testimony contains no indication that the plumbing facilities in her bathroom had, on any occasion, functioned improperly. She testified that on the night of the accident, the hot water tap produced hot water and the cold water tap produced cold. The water was directed down into the tub for the reason that the tub-shower diversion handle was accordingly adjusted. Her own witnesses testified that the hot and cold water taps and the tub-shower diversion handle worked properly two months after the accident, at a time when no intervening adjustments to the plumbing had been made. Yet respondent testified that her injuries were sustained when

she turned off the hot water faucet and thereby diverted the hot water up into the shower head. When respondent's evidence is viewed as a whole, it is apparent that this explanation of the accident amounts to a mechanical impossibility. All three handles were of white porcelain, identical in design, the left one marked "hot," the right one marked "cold," and the middle one marked with an arrow; each installed on the same line in the wall, several inches above the end rim of the tub. In our opinion, the only reasonable hypothesis supported by the evidence is that respondent mistakenly turned the tub-shower diversion handle rather than the hot water faucet. Respondent's testimony indicated no explanation for this mistake other than inadvertence. She denied eye difficulties; she stated that she did not notice any steam in the bathroom; she denied fainting spells or dizziness; and she denied taking any sleep-inducing medicine on the evening preceding the accident. It follows unerringly that respondent's own negligence in diverting water which she knew to be scalding upon her body constituted, as a matter of law, a proximate cause of her own injuries.

██ Under such circumstances, the order granting respondent a new trial must be reversed. ██ It is settled that where the evidence as a whole is insufficient to support a verdict in favor of the party whose motion for new trial has been granted, an appellate court may and should reverse the order granting a new trial. (*Kingen* v. *Weyant* (1957) 148 Cal.App.2d 656, 660 [307 P.2d 369]; *Martin* v. *Smith* (1951) 103 Cal.App.2d 894, 897 [230 P.2d 679].) Since the evidence in the present case was legally insufficient to support a verdict for respondent, it would serve no useful purpose to discuss the other grounds relied upon by respondent in support of her motion for new trial. (*Henderson* v. *Braden* (1939) 35 Cal.App.2d 88, 91 [94 P.2d 625]; *Moss* v. *Stubbs* (1931) 111 Cal.App. 359, 370-371 [295 P. 572, 296 P. 86].)

Order granting a new trial is reversed, and the trial court is directed to enter its judgment in favor of the defendants Glafara Shapiro, Efim Shapiro, and A. J. Lay, individually and doing business as Marina Maintenance Company.

Kaufman, P. J., and Agee, J., concurred.

A petition for a rehearing was denied July 24, 1963, and respondent's petition for a hearing by the Supreme Court was denied September 4, 1963. Peters, J., was of the opinion that the petition should be granted.