[Civ. No. 13351.   Second Dist., Div. Two.   Apr. 29, 1942.]

CHARLOTTE A. TEMPLE, Respondent, v. EDWARD DE MIRJIAN et al., Appellants.

Paul Barksdale D'Orr and Thomas A. Reynolds for Appellants.

Albert E. Wheatcroft for Respondent.

WOOD (W. J.), J.—Plaintiff commenced this action to recover damages for the wrongful death of her son resulting from a collision of two trucks. A jury returned a verdict in plaintiff's favor in the sum of $9,500. From the ensuing judgment defendants have appealed.

The collision occurred on March 5, 1940, between 4 and 5 o'clock a. m. on Garvey road, a paved, four lane highway in the county of Los Angeles. Plaintiff's son was driving a truck owned by Armour & Company in an easterly direction on the south side of the highway and defendant Busick was driving a truck owned by defendant De Mirjian in a westerly direction. The collision took place at a point which was south of the center line of the highway, near the most southerly traffic lane. As a result of the head-on collision both trucks were severely damaged by the force of the impact, as well as by the ensuing fire which enveloped them. Plaintiff's son was pinned in the cab of the truck and was burned to death.

At the time of the collision defendant Busick was driving on the left, the wrong side of the highway, and therefore was presumptively negligent. (*Jolley* v. *Clemens*, 28 Cal. App. (2d) 55 [82 P. (2d) 51].) In an effort to rebut the presumption of negligence, defendant Busick testified that shortly before the accident, while he was driving on the right side of

the highway, the truck began to "wander" toward the middle of the road; that when he attempted to control its direction he discovered that the steering apparatus was not functioning and therefore he was unable to control the direction which the truck traveled. Although aware of the approach of the truck driven by the deceased, defendant Busick did not immediately apply his brakes upon discovering that his truck was out of control because he was afraid that the front wheels would "jackknife" and thus catapult the truck. He did, however, apply his brakes prior to the accident but was unable to stop before he struck the other truck. Examination of defendant's truck following the accident disclosed that the steering mechanism was broken, the draglink being disconnected from the pitman-arm; the front wheels were cramped to the left as far as possible and the steering wheel was turned as far to the right as it would go. The break in the steering mechanism was at a point near the left front wheel. Defendants introduced evidence to the effect that the draglink could have been forced from the pitman-arm prior to the accident by a rock or other hard substance becoming lodged between the frame and the steering apparatus. However, no rock or other hard substance was found at the scene of the accident. Relying upon such evidence defendants contend that the jury could lawfully have come to but one conclusion, namely, that the collision was the result of an unavoidable accident caused by the breaking of the steering gear prior to the accident.

We are unable to agree with defendants' contention that the verdict is not supported by substantial evidence. Although defendant Busick was the only eyewitness to the accident the jury, whose duty it was to weigh the evidence and determine the credibility of witnesses, was not required to accept his version of the accident as being true. In addition to the presumption of negligence, arising from the fact that defendant Busick was driving on the wrong side of the highway, there was other evidence in conflict with the claim that the accident was unavoidable. The expert who testified on behalf of defendants concerning the manner in which the draglink might have become disconnected prior to the accident stated that if the steering mechanism had been broken in such manner as he described the front wheels would have "jackknifed" and, as the forward motion of the truck continued, the front tires would have skidded. However, there were no skid marks made by defendant's truck. From the manner in which the

trucks collided the jury might well have inferred that the steering gear was broken by the force of the impact rather than by some other cause prior to the accident. The evidence shows that the left front wheel of defandant's truck climbed up on the left front fender of the truck driven by the deceased and that the underpinning of defendant's truck was "skinned off" and the frame bent. From an examination of several pictures showing the damaged trucks, which were introduced in evidence, it is evident that the draglink and the pitman-arm both could easily have been broken by the force of the collision. The evidence also shows that during the night preceding the accident defendant Busick had driven approximately 185 miles and had been without sleep for from 17 to 19 hours.

The presumption of negligence on the part of defendant Busick was of course evidence which, considered in relation to other evidence inconsistent with defendant's version of the accident, created a conflict which it was the duty of the jury to resolve. Plaintiff introduced no evidence which was wholly irreconcilable with the presumption of negligence and the presumption therefore remained as evidence in the case. (*Engstrom* v. *Auburn Auto Sales Corp.*, 11 Cal. (2d) 64 [77 P. (2d) 1059]; *Smellie* v. *Southern Pac. Co.*, 212 Cal. 540 [299 Pac. 529].)

During the course of the trial defendants offered the testimony of a witness concerning the results of an experiment which he had conducted with a truck of the same make and design as that driven by defendant Busick, in an effort to show how the steering gear of the truck could have become dislocated prior to the collision. This evidence was excluded and defendants now assign the ruling as error. Defendants proposed to show that with the truck used in the experiment traveling on a paved highway similar in character to the highway on which the accident occurred, when an unyielding object was placed between the shackle bolt at the rear of the left front spring and the rear housing of the draglink, and the driver turned the steering wheel to the right, the draglink was forced off the pitman-arm knuckle within a distance of less than 40 feet, spreading the housing of the draglink in the same manner as appeared from an inspection of the draglink involved in the accident; also that the same test was made with the truck standing still with the same result. The manner in which the draglink became dislocated from the pitman-arm was never established by direct evidence, the only testimony

on the subject being that of an expert who testified concerning the various circumstances which might have caused the failure of the steering gear to function prior to the accident. It is to be noted that in the proffered experiment the witness used a piece of cement and a rock picked up on the side of the road and two different pieces of metal which he placed between the shackle-bolt and the draglink. No such objects were found at the scene of the accident. It is a general rule that the admission of testimony concerning experiments is within the discretion of the trial judge, who must determine whether the experiments would be helpful to the jury in deciding the issues. We are not authorized to disturb the judgment of the trial judge in this particular unless abuse of discretion be shown. We find no such abuse here.

Defendants assign as error the refusal of the trial court to give certain requested instructions on the subject of burden of proof. They complain especially of the failure to give an instruction in which it is pointed out that defendants contend that the car was properly greased and inspected and that they had no knowledge of any mechanical defect. In other instructions given by the court the jury was correctly informed that ''the burden is upon the plaintiff to prove by a preponderance of evidence that a defendant was negligent and that such negligence was a proximate cause of the death of the deceased,'' and further that ''The law does not permit you to guess or speculate as to the cause of the accident in question. If the evidence is equally balanced on the issue of negligence or proximate cause, so that it does not preponderate in favor of the party making the charge, then he has failed to fulfill his burden of proof. To put the matter in another way, if after considering all the evidence, you should find that it is just as probable that the cause of the accident was one not involving negligence on defendants' part as it is that negligence on his part was a proximate cause, then, because the conflicting probabilities are equal, a case against the defendant has not been established.'' The jury was also informed of the meaning of ''preponderance of evidence'' and was told how to weigh conflicting evidence. The refusal of the court to give several requested instructions on the subject of unavoidable accident is also assigned as error. The trial court did inform the jury that one of the defenses relied on by defendants was that the collision was the result of an inevitable accident without negligence on their part, because

of an unforeseeable mechanical failure of the steering gear. In another instruction the jury was told that: "In law we recognize what is termed an unavoidable or inevitable accident. These terms do not mean literally that it was not possible for such an accident to be avoided. They simply denote an accident that occurred without having been proximately caused by negligence. Even if such an accident could have been avoided by the exercise of exceptional foresight, skill or caution, still, no one may be held liable for injuries resulting from it. Both negligence and proximate cause, as defined in these instructions, are requisites for founding liability.". █ Defendants' contention that the court erred in refusing to give their requested instruction on contributory negligence is also without merit, for in other instructions, the jury was fully and fairly instructed on that subject. The requested instructions on the above mentioned subjects which were refused by the court were all repetitious in nature, containing elaborations of principles correctly stated in the instructions given. Some of them contained references to defendants' evidence which placed undue emphasis thereon. █ The refusal to give the requested instructions was therefore not error, for the trial court is not required to instruct the jury in the particular language requested by a party if the subject matter of the requested instruction is fully and fairly covered in other instructions given to the jury.

█ Defendants contend that the court erred in refusing their requested instruction on the subject of damages, conceding, however, that in general the substance of the proposed instruction was covered by other instructions. They assert that the court failed to instruct the jury that recovery was to be limited to the pecuniary value of the child's life to the parent for the probable duration of the parent's life, or the joint lives of parent and child. The court charged the jury that if they found plaintiff to be entitled to a verdict she was to be awarded such sum as, "under all the circumstances of the case, may be just compensation for the pecuniary loss she has suffered by reason of the death of her son. . . . In weighing these matters, you may consider the age of the deceased and of plaintiff, the physical condition of deceased and of plaintiff as it existed at the time of the death and immediately prior thereto; their respective expectancies of life as shown by the evidence. . . . You may, insofar as the same are shown by the evidence,

consider the expectancy of life, the health, and the earning capacity of plaintiff and of the deceased . . . and all other facts in evidence that throw light upon the question of pecuniary loss." The American Experience Table of Mortality, which was introduced in evidence, showed plaintiff's life expectancy to be 8.54 years and deceased's expectancy to be 34.43 years. The foregoing instructions fully and fairly covered the matters which defendants claim were omitted.

█ The assertion that under the instructions the jury was authorized to, and did bring in a verdict for more than the amount which was shown by the evidence to be plaintiff's pecuniary loss is based entirely upon defendants' claim that the jury was required to find that plaintiff's life expectance was 8.54 years. The jury was correctly instructed to the effect that it was not bound by the precise estimates of life expectancy as shown by the mortality tables, nor was it required to accept the estimates as to past earning capacity of the deceased son. (*Herron* v. *Smith Bros., Inc.*, 116 Cal. App. 518, 522 [2 P. (2d) 1012].) Since the evidence discloses that plaintiff was in unusually good health and had never suffered from any serious illness, the jury might well have found that plaintiff's life expectancy exceeded that shown by the mortality table.

█ It is a matter of common knowledge that many persons live beyond the period of life allotted them by the mortality tables. (*Coughman* v. *Harman,* 135 Cal. App. 49, 58 [26 P. (2d) 851].) █ The court did not err in refusing the requested instructions.

We can agree with some of the statements made by the able counsel for appellants in furtherance of the object of the appeal but we cannot agree with his views on the subject of "California Jury Instructions," which has been generously endorsed and used by the bar. Counsel states that nearly all of the court's instructions were taken from this work, which he characterizes as "a labor-saving, loose-leaf book." He states that most of the instructions contained therein are not adaptable to specific theories of a case except at the cost of labor and rearrangement and that the work "does not contain the whole gospel of the law by a long shot." This is the first adverse criticism of the work in question by a member of the bar which has come to our attention. Unquestionably "California Jury Instructions" has saved much labor on the part of trial judges and it should be added that this work has saved considerable labor on the part of the justices of the reviewing

courts of the state. We have found that the instructions prepared by the authors, which we have been called upon to review, contain accurate statements of pertinent principles of law presented in a manner fair to both sides of the litigation. By their use trial judges have been able to inform juries fairly and fully concerning the law applicable to the issues before them. The natural result is that now a smaller number of judgments are reversed because of erroneous instructions than in former times.

The judgment is affirmed.

Moore, P. J., and McComb, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied June 25, 1942.