[Crim. No. 4211.   Second Dist., Div. Three.   May 17, 1948.]

THE PEOPLE, Respondent, v. RICHARD CLAIR TENNIS, Appellant.

George Finucane for Appellant.

Fred N. Howser, Attorney General, and Henry A. Dietz, Deputy Attorney General, for Respondent.

SHINN, Acting P. J.—We have for consideration an appeal from a judgment of conviction by a jury upon an information charging defendant with a misdemeanor violation of section 192(3)(b) of the Penal Code, in that he did wilfully and unlawfully, and with gross negligence, commit an unlawful act in the operation of an automobile and thereby cause the deaths of Eric Ruud and Mrs. Eric Ruud.

It is not claimed on the appeal that the evidence was insufficient to justify the verdict. The sole contention is that the court committed error in not giving to the jury, of its own motion, an instruction as to the conditions in which driving an automobile on the left-hand half of the highway would be excusable.   It is necessary to preface our discussion of the claimed error with a brief statement of the circumstances of the accident.   It occurred about 5 o'clock p. m. on the 29th day of December, 1946, on U. S. Highway 101, in the county of San Luis Obispo.   Defendant was driving southerly, with Mr. and

Mrs. Ruud and Miss Loretta Albert, as passengers. William Bogue and his wife were driving northerly. The two cars came into practically a head-on collision on the east half of the highway. The street was dry, the weather was clear and it was approaching dusk. The Bogue car was traveling 40 or 45 miles an hour and defendant's car at a higher speed. Mr. Bogue testified that the visibility was fairly good, it had not turned dark yet, and that he saw defendant's car approaching on the east side of the highway at a distance of about 150 yards. There were two other vehicles traveling south. Defendant was then abreast of the most northerly one and had not overtaken the other. Mr. Bogue drew over to the right-hand side of the road, with his right wheels extending onto a sloping bank. Defendant's car came across the road and struck the Bogue car in this position.

At the point of collision the paved highway was 22 feet wide with a 7½-foot shoulder on the east side and an 8½-foot shoulder on the west. The middle of the pavement was marked with a double white line which extended 400 or 500 yards northerly of the point of collision, and for some 100 yards to the south. At a point 792 feet north of the point of collision, and for 200 or 250 yards north of that, the highway was broader on the west side and automobiles traveling south could pass on the pavement without crossing the middle line. Defendant testified that he had passed one southbound car and had endeavored several times to pass the remaining car that was immediately ahead of him; that the driver of this car would speed up when he attempted to pass and then slow down and that he, defendant, was irked at this procedure and that the other driver also appeared to be irked at defendant's attempts to pass him; that he endeavored to pass at some point to the north where there was room to pass without crossing the middle line; that he was then going 40 or 45 miles an hour; that he did not see any car approaching on the east half of the highway, although he indistinctly remembered seeing the lights of the Ruud (Bogue) car, just before he struck it; that when he pulled abreast of the car ahead of him the car behind him had come close up and that he could not turn back between the two cars; that he had speeded up in attempting to pass the car, stepped on the gas harder when he realized that the Bogue car was upon him and that he was then going 60 or 65 miles an hour; that he did not slow down, apply his brakes or endeavor to turn aside. The point of the collision was between two curves in the highway, each of them curving to the

left of a driver coming south. From an examination of maps showing some 1,400 feet of the highway, together with defendant's testimony, it appears clear that from the point where he testified he started to pass the other cars his view was obstructed by a bank on the left-hand side of the highway and he could not then have seen the Bogue car. However, the accident happened approximately midway between the two curves and there was nothing to prevent defendant from having a clear view of the approaching Bogue car for a distance of several hundred feet before he reached the point of the collision.

Appellant's single assignment of error reads as follows: "The trial court committed prejudicial error in failing to instruct the jury sua sponte that violations of the vehicle code may not, under certain circumstances, constitute negligence." He merely asserts that there was a logical explanation for defendant's being on the wrong side of the highway and that he was therefore entitled to an instruction that a violation of the Vehicle Code on his part, could be excused. Such violation, it is said, "may be excused, and may not constitute negligence, where the operator of a vehicle is in a position in which he is either unable to comply with the rule of the road, or when the stress of an emergency makes it necessary to violate such section." The argument is addressed to the subject covered by the instruction given, reading as follows: "You are instructed that except when a roadway has been divided into three traffic lanes, no vehicle shall be driven to the left side of the center line of a roadway in overtaking and passing another vehicle proceeding in the same direction unless such left side is clearly visible and is free of oncoming traffic for a sufficient distance ahead to permit such overtaking and passing to be completely made without interfering with the safe operation of any vehicle approaching from the opposite direction or any vehicle overtaken. In every event the overtaking vehicle must return to the right-hand side of the roadway before coming within one hundred feet of any vehicle approaching from the opposite direction."

Defendant, according to his own testimony, violated the law as stated in this instruction, and gave no explanation of his conduct except that in his preoccupation of endeavoring to pass one car he wholly failed to use even the slight degree of care that would have enabled him to see the Bogue car approaching. There was in the evidence no excuse for his being

on the wrong side of the highway. The fact, if it was a fact, that he had endeavored several times to pass the car ahead of him and had been unable to do so, rather than furnishing an excuse for being on the wrong side of the highway, should have led him to greater caution to make no further attempt until he was certain that the east half of the highway was free from traffic for a long distance ahead of him. Moreover, according to the testimony of Bogue, defendant was driving on the left-hand side of the road while he was passing two cars.

Certain provisions of section 525 of the Vehicle Code allow the use of the left-hand half of the highway in making a left-hand turn, or when the right half of the highway is closed to traffic while under construction or repair. Neither of these conditions existed, and therefore the legality of defendant's conduct was to be judged according to the requirements of section 530. There was no evidence of circumstances which would have rendered excusable the conduct of defendant, as he, himself, described it. Appellant quotes at some length from *Jolley* v. *Clemens*, 28 Cal.App.2d 55 [82 P.2d 51], and seeks to invoke the rule there stated under which one who, when confronted with a sudden emergency, drives to the left side of the highway, is not guilty of negligence if, in so doing, he obeys the dictates of ordinary prudence. The circumstance in the Jolley case which made the rule applicable was the sudden appearance of a stray horse on the pavement. It already appears that there was no condition, emergency or otherwise, which would have rendered necessary or even proper an instruction based upon the rule applied in the Jolley case. Nevertheless, at the request of appellant the court gave an instruction favorable to him as to what his duty would have been if he had been confronted with peril arising from the actual presence or appearance of imminent danger. While the instruction was applicable primarily to appellant's conduct after he saw the Bogue car approaching, the principle would also have been applicable if it had been shown by the evidence that turning onto the left half of the roadway reasonably appeared to have been the part of safety.

The instructions defined the offense charged and the terms "negligence" and "gross negligence." They covered all the law applicable to the trial and we find no incorrections except that instructions given at the request of the People, and others given at the request of defendant, incorporated some of the provisions of subdivision 2 of section 192, of the Penal

Code, which are expressly made inapplicable to acts committed in the driving of a vehicle.

Defendant in his brief does not call attention to any circumstance in evidence which would even have tended to excuse his being on the wrong side of the roadway. His criticism of the sufficiency of the instructions consists of loosely worded generalities. His claim that an additional instruction should have been given as to conditions under which defendant could have lawfully been on the east half of the roadway has no semblance of merit. No such conditions existed. The vacuous assertion that the court should have given additional instructions of its own motion is unworthy of further discussion.

Defendant's own testimony was a detailed admission of violation of the law. We think anything other than a verdict of guilty would have been a miscarriage of justice. The appeal is groundless.

The judgment is affirmed.

Wood, J., and Vallée, J. pro tem., concurred.