[Civ. No. 7493. Third Dist. Aug. 2, 1948.]

BETTY JACK GREEN et al., Appellants, v. JOHN UARTE et al., Respondents.

MARY ROGERS et al., Appellants, v. JOHN UARTE et al., Respondents.

C. Ray Robinson and Burton D. Wood for Appellants.

Chester O. Hansen, John Said and Stammer & McKnight for Respondents.

ADAMS, P. J.—In an automobile accident occurring on Highway 99 a short distance north of Madera on July 24, 1946, Roger Davis Green and Richard Francis Rogers were killed. These actions were thereafter instituted by the respective widows and children of said decedents, seeking the recovery of damages from John Uarte, the driver of a Ford sedan, and Golden State Company, Limited, the owner of certain trucking equipment, and its employee Don Arthur McCoy, the driver of same, which vehicles were involved in a collision with a station wagon in which decedents were riding, it being alleged that the accident was the result of negligence and unlawful conduct on the part of Uarte and McCoy in the operation of their respective vehicles.

The cases were consolidated for trial before a jury, and at the conclusion of the evidence adduced on behalf of plaintiffs motions for a nonsuit were made by all of the defendants. They were granted as to Golden State Company, Limited, and McCoy, but denied as to Uarte, and these appeals, which have been consolidated, were then taken from the judgments of nonsuit in favor of said defendants. The sole question is whether, in view of the evidence presented by plaintiffs, the trial court erred in granting such nonsuits.

It is conceded that the accident occurred about 11:30 p.m. on a rainy night when the pavement was wet and slippery; that the company's equipment, which was proceeding north, consisted of a tractor and two large trailers partially loaded, said equipment being 8 feet wide, having an overall length of 57 feet, and weighing approximately 43,000 pounds; that Uarte, who was driving a Ford sedan, and decedents, who were riding in a station wagon, were proceeding southward on the highway, Uarte's car being ahead of the station wagon; and that at the place where the collision occurred about 2 miles north of Madera, the highway was level, was paved to a width of 20 feet, had a 6-foot shoulder on each side, and was marked by a white line in the center.

■ The only witness who testified as to the occurrence of the accident was defendant McCoy, who was called by plaintiffs under section 2055 of the Code of Civil Procedure. Under well-established rules, plaintiffs on this appeal have a right to rely upon such portions of his testimony as are favorable to them, and to disregard the unfavorable portions thereof. (*Anthony* v. *Hobbie*, 25 Cal.2d 814, 817-818 [155 P.2d 826]; *Weck* v. *Los Angeles County Flood Control Dist.*, 80 Cal.App. 2d 182, 191-192 [181 P.2d 935].)

■ His testimony is that he had been traveling at the rate of 40 miles per hour except when going through towns or on grades, that it had been raining during the night and was raining when he left Madera, but that he could not remember whether it was raining at the exact time of the accident; that the rain was the first of the season, the highway was wet, and there was a certain amount of oil, dirt and debris upon it which rendered it very slippery, which he knew; that he was traveling at 40 miles per hour just preceding the collision; that he saw the headlights of Uarte's sedan and the decedents' station wagon when they were about 750 feet distant, and that they were approaching on their right side of the highway; that his equipment collided with the station wagon on the *left* side of the highway; that he could not stop his equipment as readily on the wet pavement as he would have been able to do had it been dry; that he could not remember whether his windshield wiper was working at the time of his encounter with decedents' car, or whether he applied his brakes, or whether he turned his truck immediately before the collision.

In an attempt to explain and justify the fact that his equipment was on the wrong side of the highway when it collided with decedents' station wagon he testified that the Uarte car, when it reached a point about 50 feet in front of him and while his equipment was still on its own right side of the road, suddenly came over into the right lane and hit the *right* front wheel of the tractor portion of his equipment; and that as a result of this impact his lights went out, his steering mechanism started "spinning," and he lost control of his vehicle, whereupon it went over onto the left side of the road, thus colliding with decedents' station wagon. Photographs taken at the scene show that the equipment finally came to rest with its foremost portion on the left shoulder headed south, and the hind truck lengthwise squarely across the left lane of the road. He also testified that it appeared to him that decedents' sedan

"clipped" Uarte's car or that one or the other of them "blew a tire, or something"; but he admitted he saw nothing of the kind and had no evidence that a tire was blown out; and while on this appeal respondents in their brief assert that the Uarte car was "clipped" by decedents' car and "catapulted to the wrong side of the road," and urge that for this reason the nonsuit was properly granted, we note that the trial court ruled out McCoy's testimony in this connection, as being only the opinion of the witness, and stated that whether there was any such clipping or what happened would be a matter for determination by the jury.

McCoy's testimony thus made a prima facie case in favor of plaintiffs. In *Musgrove* v. *Zobrist,* 83 Cal.App.2d 101, 103 [187 P.2d 782] (hearing in Supreme Court denied) the court said that driving on the wrong side of the highway is prima facie evidence of negligence, and calls for an explanation on the driver's part, and the burden is upon the driver to excuse or justify his position upon the highway, citing *Jolley* v. *Clemens,* 28 Cal.App.2d 55, 68 [82 P.2d 51], and *Parker* v. *Auschwitz,* 7 Cal.App.2d 693, 696 [47 P.2d 341]. Also see *Temple* v. *De Mirjian,* 51 Cal.App.2d 559 [125 P.2d 544]. No contributory negligence on the part of decedents was shown, and they are presumed to have taken proper care of their own concerns. Therefore whether the accident was proximately caused by negligence on the part of McCoy should have been submitted to the jury for its determination. In *Smellie* v. *Southern Pac. Co.,* 212 Cal. 540, 558-559 [299 P. 529], the court said:

"The effect of evidence given by an adverse party under section 2055 was commented on by this court in the recent case of *Marchetti* v. *Southern Pac. Co.,* 204 Cal. 679, 686 [269 P. 529, 532]. In that case we said: 'While the two trainmen, who were called for cross-examination under section 2055 of the Code of Civil Procedure, testified that they gave the required signals, both by ringing the bell and sounding the whistle, the plaintiffs, especially upon a motion for a nonsuit, would not be concluded by their evidence, it being the duty of the court upon a motion for a nonsuit to accept the evidence most favorable to the plaintiffs.' . . .

"Our conclusion, therefore, is that the testimony of a witness called under section 2055 of the Code of Civil Procedure is not, when weighing it against a presumption, to be considered, nor is it, really, evidence of the party calling such wit-

ness, and that the evidence thus produced does not dispel a presumption contrary thereto, but in favor of the party calling such adverse witness. This testimony is, of course, evidence in the case and may be considered in determining the issues of the case upon the trial or final hearing by the court, or if the case is before a jury, by the jury. When the action is before a jury, however, the duty of weighing this evidence is with the jury and not with the court upon a motion for a nonsuit or directed verdict.''

Also see *Anthony* v. *Hobbie, supra,* in which case, though the evidence showed that defendant's car was traveling in its own proper traffic lane when it struck and killed the decedent who was in that lane, the court held that the presumption in favor of decedent was evidence to be weighed against the testimony of defendant, and raised an issue of fact which necessitated reversal of a judgment for a directed verdict in favor of defendant and submission of the case to a jury.

In *Wood* v. *Samaritan Institution,* 26 Cal.2d 847, 849 [161 P.2d 556], in reversing a judgment entered after a directed verdict for defendant, the court said that in determining an appeal from such a judgment it was its duty to consider only the evidence most favorable to plaintiff, together with every inference which could be drawn therefrom reasonably, and every presumption that could fairly be deemed to arise in support of plaintiff; and that since under the circumstances of the case it could not be said that *as matter of law plaintiff's evidence failed to establish the negligence with which defendant was charged,* the issue should have been resolved as one of fact for the jury. Also see *Kirk* v. *Los Angeles Ry. Corp.,* 26 Cal.2d 833 [161 P.2d 673, 164 A.L.R. 1]; *Simon* v. *City and County of San Francisco,* 79 Cal.App.2d 590, 597 [180 P.2d 393].

Obviously the trial court could not say in this case that McCoy's testimony as to how his equipment happened to be on the wrong side of the road and in decedents' lane of travel established freedom from negligence on his part as matter of law. He was traveling at a rate of 40 miles per hour, the maximum rate of speed allowed for his equipment (Veh. Code, § 515), and the road was wet and slippery, which fact would justify a conclusion that he was not driving his vehicle in a reasonable and prudent manner having due regard for the conditions existing. (Veh. Code, § 510.) He saw the Uarte car and decedents' station wagon when they were some 750

feet away from him, and whether, as he said, the Uarte car "zooped" in front of him, struck his right front wheel and caused him to lose control of his vehicles so that they crossed over into decedents' lane of travel without fault on his part were questions of fact to be determined by the jury.

Also there is testimony from which it might have been inferred that McCoy's vehicles were at least partially in the left lane before they were struck by the Uarte sedan, and that Uarte turned across the highway for that reason. A traffic officer who investigated the accident soon after it happened stated that he found "gouge" marks on the pavement approximately 4 feet east of the center line; and since the truck equipment was struck on the right front wheel and the photographs introduced in evidence show that that portion of the truck was dropped to the ground, it would not be unreasonable to infer, in view of the width of the truck, that it was at least partially over in the left lane before it was struck by Uarte. Also the jury would not have been compelled to accept McCoy's version of how the accident happened. (*Temple* v. *De Mirjian, supra.*)

The judgments appealed from are reversed.

Thompson, J., and Peek, J., concurred.

Respondents' petition for a hearing by the Supreme Court was denied September 30, 1948. Edmonds, J., and Traynor, J., voted for a hearing.