[Crim. No. 825.   Fourth Dist.   Dec. 18, 1950.]

THE  PEOPLE, Respondent, v. LUCILLE  LAVERNE
ABBOTT, Appellant.

Robert H. Haden and Richard E. Dafler for Appellant.

Fred N. Howser, Attorney General, and Donald D. Stoker, Deputy Attorney General, for Respondent.

GRIFFIN, J.—Defendant was charged with the crime of violating section 192, subdivision 3(a) of the Penal Code (manslaughter) in that she killed three children in driving a vehicle with gross negligence. In a second count she was charged with violating section 501 of the Vehicle Code in driving a vehicle on a public highway while under the influence of intoxicating liquor. A trial by jury resulted in a conviction on count number one except the jury found her guilty under subdivision 3(b), section 192 of the Penal Code, and found her not guilty on the second count.

On appeal defendant attacks the sufficiency of the evidence and contends that the evidence shows the accident giving rise to the death of the children was unavoidable, citing *People* v. *Wilson,* 78 Cal.App.2d 108 [177 P.2d 567] ; *People* v. *Rodgers,* 94 Cal.App.2d 166 [210 P.2d 71]; Penal Code, sections 26 (Six) and 192; and *People* v. *McLachlan,* 36 Cal. App.2d Supp. 754, 759 [93 P.2d 280].

Mr. Roman was driving in a Plymouth car with his six children in a westerly direction, in his northerly one half of a two-lane highway numbered 198 on February 12, 1950, about 5 o'clock in the afternoon, at a rate of speed of about 45 miles per hour. His car had just been overtaken and passed by a large bus proceeding in the same direction. Soon thereafter defendant, who was driving a 1936 Ford V-8 coupe in an easterly direction on the same highway, careened across the highway into the northerly lane and her car collided with the Plymouth car and killed three of the children and injured all parties involved in the accident. All were removed to near-by hospitals. A blood sample was taken from the defendant for the purpose of determining its alcoholic content. A partially filled pint bottle of whiskey was found in defendant's demolished car, and one partially filled can of beer was found nearby.

The bus driver and several of the passengers testified as to the operation of defendant's car and the manner of its approach, i. e., that they first noticed the Ford about 100 yards in front of them proceeding at a speed of at least 50 to 55 miles per hour toward them; that they had just completed overtaking and passing the Plymouth; that when the Ford was about 200 feet in front of them it was in the southerly dirt portion or shoulder of the highway and caused dust to fly; that it came out of the dirt onto the highway and started to skid or "slide from the back end"; and that

it appeared to be out of the control of the driver. The driver of the bus pulled his car over toward the north shoulder of the highway. From the rearview mirror the bus driver saw that defendant was going to miss the rear end of his bus, but saw defendant's car cross over into the westbound traffic lane and collide with the Plymouth. One passenger on the bus said he saw defendant's car "kinda weaving a little bit to the left and right" as it approached the stage. Another passenger testified she saw it weaving across the white center line and back again as it approached. Still another related that he saw it weaving back and forth across the road, first on one side and then the other; that it then went into the dirt on the south shoulder, and had the bus driver not pulled to the right defendant's car would have hit the bus. The passenger of one other car proceeding easterly about that time testified that the defendant's Ford passed him "down the road a ways" just before the accident occurred proceeding approximately 50 to 55 miles per hour, but making a normal pass; and that the traffic was "fairly heavy." The prima facie speed limit on that highway was 55 miles per hour.

Mr. Roman testified his Plymouth was "extremely over to the right," approximately four feet north of the center white line; that he remembered being there so the bus might pass him; that the bus had returned to its proper lane after passing him and that he did not remember anything after the collision occurred.

The traffic officers found both cars crushed and at rest in the westbound lane, entirely north of the center line. There was a "black stripe" on the highway, indicating the course taken by the Ford. It extended from the south shoulder of the highway along the south lane, curving across the white center line and about four feet into the north lane. Although the defendant was found unconscious on the north shoulder of the pavement, the officers detected the smell of intoxicating liquor on her breath as well as on the breath of the other woman who was an occupant of defendant's car.

That evening another officer talked to defendant at the hospital. She still had the odor of alcohol on her breath at that time. Analysis of defendant's blood taken three hours after the accident, revealed 1.5 milligrams of alcohol per cubic centimeter of blood. The doctor testified that ordinarily, in his opinion, the nervous system and faculties, such as judgment, coordination and perception, would be affected

by that amount of alcohol; that at that percentage some people's ability to operate a vehicle is interfered with and others are not; that alcoholic deterioration by the body, under ordinary conditions, through the breath, kidneys and skin, is at a minimum rate of about 10 per cent per hour.

On February 13, defendant signed a written statement of her activities on the day of the accident. She related that she and her passenger friend knew a bartender near Tulare; that about 4 p. m. she drank a Tom Collins and her girl friend had a beer; that on the highway in question she was driving and passed two or three cars; that she caught up with another and that she asked her friend if she thought she could pass it and that they agreed she could; that as they were overtaking it she moved her left foot and accidentally slipped a small rubber mat over the throttle; that while she was reaching down on the floorboard to remove it the wreck happened. She stated "The mat was not heavy enough to hold the gas feed down, but I wanted it off," and that the cars she passed and the car she hit were the only cars she saw just before the wreck; that the car she hit was "right on the white line."

Most of defendant's witnesses testified in relation to her claimed intoxication and that testimony bore mainly on count number two. At the trial is the first time defendant stated that she saw a bus or that one was approaching her on the highway about the time she was overtaking and passing the cars mentioned. She claimed her car was not weaving from one side to the other, and that she pulled over onto the south shoulder of the highway to prevent the bus from hitting her; that it was then she reached down to remove the rubber mat and that it was then she saw the Plymouth coming down the highway "on the other side behind the bus" and "I thought was pretty close to the center of the road"; that her car "seemed like it started sliding" and she "tried to get it back into control and couldn't"; that she saw she could not control the car so "I think I did like that," i. e., "raising my hand in front of my face." The party who was riding in defendant's car corroborated defendant's story in many respects.

On appeal defendant claims that the evidence was insufficient to show that she committed any unlawful act or any lawful act in an unlawful manner or that any act of defendant was the proximate cause of the accident, and that

the evidence was insufficient to support the charge of manslaughter.

An appellate court must assume in favor of the verdict the existence of every fact which the jury could have reasonably deduced from the evidence and then determine whether such facts are sufficient to support the verdict. If the circumstances reasonably justify the verdict of the jury, the opinion of the reviewing court that those circumstances might also reasonably be reconciled with the innocence of the defendant will not warrant interference with the determination of the jury. (*People* v. *Newland,* 15 Cal.2d 678, 682 [104 P.2d 778].)

Although the basic speed limit was 55 miles per hour at the scene of the accident, this does not afford the driver the right to drive at that speed under all conditions. (Veh. Code, § 510.) The jury might well have believed that on this narrow two-lane highway, under the traffic conditions existing at the time, on a holiday, the speed at which defendant was driving her car was unreasonable and dangerous and that such unreasonable speed caused the accident in which three children were killed.

Section 525 (a) of the Vehicle Code (with certain exceptions explained to the jury) provides that upon all roadways of sufficient width a vehicle shall be driven on the right half of the roadway. In *People* v. *Tennis,* 85 Cal.App.2d 521 [193 P.2d 5], it was held that where one drives on the left-hand side of the highway contrary to the provisions of the Vehicle Code, without excuse or justification, and such act results in the death of a human being, the driver may be found guilty of manslaughter. (See, also, *Green* v. *Uarte,* 87 Cal. App.2d 75, 78 [196 P.2d 63].)

In the instant case the evidence supports the finding that defendant drove on the left-hand side of the highway without excuse or justification, and that her act caused the death of three human beings.

While the jury acquitted the defendant of the charge involved in the second count, the fact that she had been drinking was relevant evidence for the jury to consider in determining whether she acted as a reasonably prudent person under the circumstances. Even under defendant's own testimony, she had diverted her attention from steering the vehicle, and her attention was elsewhere, as shown in her explanation of her activity in attempting to remove the rubber mat from

the foot-feed or throttle when she "glanced down at it and looked back to the road."

The question whether the accident which gave rise to the death of these three children "was an unavoidable one" was properly presented to the jury and defendant's contention was there rejected. The credibility of the witnesses and the weight to be given their testimony were for the determination of the trier of the facts. (*People* v. *Neal,* 97 Cal.App.2d 668, 673 [218 P.2d 556].)

The jury was justified in reaching the verdict as recorded. Judgment affirmed.

Barnard, P. J., and Mussell, J., concurred.