[Civ. No. 18655. Second Dist., Div. Three. Mar. 31, 1952.]

VELMA L. CARLTON, Appellant, v. PACIFIC COAST GASOLINE COMPANY (a Corporation) et al., Defendants; WILLIAM A. KIRK, JR., et al., Respondents.

C. Ransom Samuelson for Appellant.

Parker, Stanbury, Reese & McGee and R. M. Crookshank for Respondents.

VICKERS, J. pro tem.—Appeal by plaintiff from a judgment of nonsuit.

Plaintiff filed this action to recover damages for the wrongful death of her husband. On October 27, 1948, about 11 a. m., he was driving a truck and trailer loaded with oil well pipe. The vehicle left the road opposite a point where the

defendant Kirk had parked his car, entered a plowed field and came to a sudden stop, with the result that the pipe shifted forward into the cab of the truck and killed the decedent. Originally there were five defendants in the action but the only ones with which we are concerned in this appeal are the defendant Kirk, the driver of an automobile that was parked so as to occupy a portion of the road, and the defendant Gisler, the lessee of the plowed field.

This being an appeal from a judgment of nonsuit we must apply the following legal principles: " 'The motion for nonsuit admits the truth of plaintiff's evidence, and every inference of fact that can be legitimately drawn therefrom, and . . . the evidence should be interpreted most strongly against the defendant.' " (*Hoff* v. *Los Angeles Pacific Co.,* 158 Cal. 596, 599 [112 P. 53].) "The trial and appellate courts must indulge in every inference or presumption fairly arising from the evidence in favor of plaintiff." (*Slater* v. *Shell Oil Co.,* 39 Cal.App.2d 535, 539 [103 P.2d 1043].)

It will therefore be necessary for us to examine the evidence in considerable detail. It will also be necessary to differentiate between the evidence received from the plaintiff's witnesses and that elicited from certain of the defendants when called by plaintiff in pursuance to Code of Civil Procedure, section 2055. Insofar as the latter evidence is concerned the plaintiff may rely on so much of it as is favorable to her and disregard the unfavorable portions (see *Green* v. *Uarte,* 87 Cal.App.2d 75, 77 [196 P.2d 63]).

The scene of the accident was Atlanta Street between Cannery and Buchard Streets in Orange County. Atlanta Street is a country road which had an oil pavement 16 feet in width and dirt shoulders on each side of varying widths. The county had a 60-foot easement for road purposes but had only made use of a portion thereof. Atlanta Street runs east and west and for a mile or more in each direction was level, and from the photographic exhibits offered by plaintiff appears to have been fairly smooth. The land on each side of Atlanta Street was flat and open and for many years had been used for agricultural purposes by the defendant Gisler, under a long term lease. He testified, when called by plaintiff as a witness under Code of Civil Procedure, section 2055, that he had plowed it to within 3 feet of the paved portion of the road. The weather was clear and dry.

Decedent approached from the west, alone, driving the truck and trailer in question. This vehicle was 8 feet wide

and approximately 54 feet long. It weighed approximately 13 tons and was loaded with approximately 21 tons of oil pipe secured to it by chains. Under the physical conditions present the maximum speed of the vehicle was 40 miles per hour. Decedent was bringing the pipe from a point several miles distant. The pipe was to be delivered by decedent to an oil well located about one-quarter of a mile southeasterly from the point where the defendant Kirk and another defendant, Cox, were parked. The approach to this well was from Atlanta Street and by means of a dirt road. Plaintiff's expert witness Jagger testified that normally it would require 350 feet to 400 feet to slow down the vehicle so loaded from 40 miles per hour in order to make a right-hand turn and that it would have to practically come to a stop in order to make the turn in question into the well. Plaintiff's witness Hughes was working on the derrick floor of the well in question and was looking for the decedent. He testified that he could not tell whether the cars of defendants Kirk and Cox were parked on or off the roadway or what the speed of the truck and trailer was as it passed those cars; that the truck appeared to go off the north side of the road opposite to or a little east of the defendants' cars; that he had been watching the truck for a half minute before the crash. He further testified the sandy dirt came "right up to the edge" of the pavement.

Plaintiff called as one of her witnesses Norman Heffner, a state highway patrolman. He identified the photographic exhibits offered by plaintiff as truly depicting the scene as it appeared upon his arrival shortly after the accident. From these exhibits it appears that the rear of the truck was supported by four wheels having two tires on each, which extended almost to the edges of the bed of the truck and that the front of the truck was supported by two single wheels which had a somewhat narrower tread. It also appears from these exhibits that the trailer was supported by six wheels of two tires each, which extended almost to the edges of the trailer. Two of these wheels were under the front and four of them under the rear of the trailer. As shown by these photographs the vehicle came to rest in the following position: The trailer was inclined slightly to the north with its right wheels on the pavement and its left wheels just off the dirt shoulder with the tires partly buried in loose earth; the truck was inclined further to the north with one of its right rear wheels on the shoulder and the other in the soft ground; the left wheels of the truck were in the plowed field; the front

wheels of the truck were almost completely buried in the plowed field, the dirt of which had been piled up by the front of the truck so that it extended partly over the bumper; the right front wheel was approximately 10 feet from the pavement.

Officer Heffner testified as follows: That the paved portion of the road was 16 feet wide and the northerly shoulder was of packed dirt and was 3 feet wide; that the southerly shoulder was in better condition and was 6 feet wide; that the field was plowed up to these shoulders; that the front end of the truck was 10 feet from the pavement; that the left rear tires were just off the pavement on the shoulder and that the marks of the tread of these tires could be seen just off the pavement and on the dirt shoulder, running from a point 66 feet to the west to the left rear tires; the witness then identified these tread marks on plaintiff's photographic exhibit 1 and indicated them by drawing a red line thereon. The officer also testified he looked for but found no skid marks and was unable to find any eyewitnesses.

The defendants Kirk and Cox were called by the plaintiff to testify under Code of Civil Procedure, section 2055. They testified that Kirk parked his passenger automobile on the south side of Atlanta facing west, with the left wheels resting on the shoulder and the right side of the car extending from 3 feet to 5 feet onto the pavement; that Kirk then engaged in conversation with Cox who had parked his car further to the south of and along the side of Kirk's car; that Cox's car was close to that of the defendant Kirk and was facing east; that from that time until the accident there was no other traffic on the road except a Dodge car that passed in a westerly direction shortly after the defendants' cars came to rest; that decedent's vehicle only moved over about 2 feet to the north to pass Kirk's car and was 2 or 3 feet away from it while passing; that it was traveling 45 miles per hour and came to rest 80 feet (per Cox) and 200 feet (per Kirk) from defendants' cars. From the photographic exhibits it is impossible to tell with certainty how wide the north shoulder of the road was for the last 15 feet before the truck turned into the plowed field. It is also impossible to tell how hard that part of the shoulder was or whether its surface was smooth or rough. If the case had been submitted to the jury a conclusion by it that that portion of the shoulder was less than 2 feet wide, was soft and could not support the vehicle in question

with its load of pipe, could not be said to be unsupported by the evidence.

 Insofar as the respondent Kirk is concerned it is admitted that he violated Vehicle Code, section 582, by parking his car partly on the main traveled portion of the highway when it was practicable to have parked it entirely off of it. Such action by him constituted negligence (see *Thomson* v. *Bayless*, 24 Cal.2d 543, 546 [150 P.2d 413]). However the burden was on the plaintiff to establish a prima facie case that such negligence was a proximate cause of the vehicle leaving the roadway and the death of decedent. When we apply the legal principles, above set forth in this opinion, to the evidence and give effect to the presumption that decedent exercised due care for his safety, we are forced to conclude that plaintiff did establish such a prima facie case.

 Respondent Kirk earnestly urges that the presumption of due care is dispelled by uncontroverted physical facts and the evidence produced by plaintiff. With this we cannot agree. Disregarding the unfavorable testimony given by defendants under section 2055 as we must (see *Green* v. *Uarte, supra,* 87 Cal.App.2d 75), and accepting only the favorable evidence given by them, it is established that the Kirk car was on the pavement but it is not established that it was obstructing only 3 or 5 feet of the pavement. The only witness who testified on this point for plaintiff was Hughes. He stated he could not tell whether the parked cars were on or off the pavement. We must likewise disregard the defendants' testimony as to the speed of the vehicle. We must assume in accordance with Hughes' testimony that the point where the vehicle left the roadway was opposite to or just to the east of the parked cars. We therefore have no evidence, binding on the plaintiff, as to the acts and conduct of decedent which resulted in the happening of the accident that is inconsistent as a matter of law with the presumption that decedent exercised due care. Nor do we have such evidence from which it must be inferred that the conduct of the defendant Kirk was not a proximate cause of the accident or that decedent's conduct contributed thereto. The presumption therefore was not dispelled.

The case of *Smellie* v. *Southern Pac. Co.,* 212 Cal. 540 [299 P. 529], exhaustively considers the presumption of due care and its application. At page 549 that court said that the presumption was evidence and may in certain cases out-

weigh positive evidence addressed against it. At page 555 that court said that when the party's evidence is not inconsistent with the presumption he invokes, the evidence sufficiently establishes a sphere or field within which the presumption can operate and that whether it does must be decided by the trial court as a question of law. Again at page 560 that court said that the testimony of an adverse party was not sufficient as a matter of law to dispel the presumption of due care, but merely tended to create a conflict therewith, and that it was the right of the party relying on the presumption to have the conflict passed upon by the jury in its final deliberations, and not by the court.

■ Under the present state of the evidence we must therefore assume that decedent drove as close to the Kirk car as it appeared reasonably safe to do, that the position of that car on the highway was such as to force him to drive his vehicle off the pavement, that the dirt shoulder gave way and caused the vehicle to enter the plowed field; and that the resulting sudden stopping of the vehicle caused the pipe to shift forward and kill decedent. The question of proximate cause was therefore for the jury's determination and that portion of the judgment in favor of the defendant Kirk must be reversed.

The appeal from the portion of the judgment in favor of the defendant Gisler, presents the reverse of the problem involved in the Kirk case. There the negligence of th defendant Kirk was admitted but it was denied that such negligence could be found to be a proximate cause of the death of decedent. Here the negligence of the defendant Gisler is denied but there is no contention that as a matter of law it can be said that the maintenance of the plowed field by defendant Gisler was not a contributing proximate cause to decedent's death.

■ The defendant Gisler concedes, as he must, that if he had excavated a deep pit close to the roadway, so as to constitute a trap or pitfall, and some user of the roadway fell into it, the questions of negligence and proximate cause would be for the jury's determination (see *Gerberich* v. *Southern Calif. Edison Co.*, 5 Cal.2d 46 [53 P.2d 948]; 159 A.L.R., p. 136, and cases cited). In considering the liability of the possessor of land adjacent to a highway for injuries suffered on the land by a user of the highway the American Law Institute, Torts, vol. 2, in the opening paragraph of section 368 makes the following statement: "A possessor of land who

creates or maintains thereon an excavation or other artificial condition so near an existing highway that he realizes or should realize that it involves an unreasonable risk to others accidentally brought into contact therewith while traveling with reasonable care upon the highway, is subject to liability for bodily harm thereby caused to them.'' Subparagraph d of section 368 reads as follows: ''In determining whether the condition is one which creates an unreasonable risk of bodily harm to persons lawfully traveling the highway, the determining factor is whether it is so placed that travelers may come in contact with it while carefully traveling the highway, as by being forced off the road by other traffic, by skidding upon a slippery surface or by a misstep while walking upon a highway. It is, therefore, impossible to state any precise distance at which a condition ceases to involve unreasonable risk.''

 Whether or not the condition created by a possessor of land constitutes a trap or pitfall and whether it is an artificial condition, of such a nature and so near an existing highway that such possessor should have realized that it involved an unreasonable risk to users of the highway, are generally questions of fact to be determined by the jury. Unless it can be said from the evidence in our case that such questions and the alleged negligence of defendant Gisler became questions of law we must reverse the judgment as to defendant Gisler. The evidence and the inferences to be reasonably drawn therefrom relating to this subject, are as follows: Atlanta Street had 16 feet of pavement; the northerly dirt shoulder was of uncertain width and firmness at the scene of the accident; Atlanta Street ran through an oil district (eight oil derricks are visible in plaintiff's exhibits and all of the parties and most of the witnesses were in the oil business); Atlanta Street was traversed by large vehicles 8 feet in width carrying heavy loads; defendant Gisler had plowed to within 3 feet of the pavement and to a depth of not less than 1 foot; such plowing had been done on a portion of the ''highway'' (Vehicle Code, section 660 (a) defines ''Highway'' as follows: ''The term 'highway' includes all or any part of the entire width of right of way of a State highway, whether or not such entire area is actually used for highway purposes''); defendant Gisler's right to the use of the land in question was subject to an easement for highway purposes. This use could have been abated if inconsistent with the full enjoyment of the right of way by the public. The case of

*People* v. *Henderson,* 85 Cal.App.2d 653 [194 P.2d 91], differs factually to some extent from our case but some of the principles of law declared therein are applicable and support this right of abatement. The defendant landowner in that case had erected a shed upon the unused portion of the highway easement without having obtained a permit therefor from the Department of Public Works. The People secured an injunction. At page 656 the court said: "It is a well-settled principle of common law, which has frequently been embodied in statutory form, that a structure maintained upon a public roadway is unlawful (citing cases), and is a nuisance *per se* subject to abatement at the instance of proper authority. (Citing cases.) It is no defense to an action based thereon that the structure is off the traveled part of the highway or that sufficient areas remain to allow public use of the right of way in the accustomed manner. (Citing cases.) Where the sole question is whether the maintenance of the structure or obstruction is inconsistent with the full enjoyment of the right of way by the public, the owner of the fee is deemed to possess no greater rights than those who are strangers to the title." It cannot be said as a matter of law that the manner in which the defendant Gisler plowed and maintained the portion of the "highway" adjacent to the roadway, was not an obstruction and inconsistent with the full enjoyment of the right of way by the public.

Giving due effect to the controlling principles of law as applied to the evidence we cannot say as a matter of law that the defendant Gisler, in plowing up the portion of the "highway" in question and maintaining the same, in the manner described above was not guilty of negligence which was a proximate cause of decedent's death. The plaintiff having thus established a prima facie case as to the defendant Gisler, the latter's motion for nonsuit should have been denied.

The judgment, and the order granting the motions for nonsuit, are reversed as to each respondent.

Wood (Parker), Acting P. J., and Vallée, J., concurred.